[Civil No. 3951.   Filed July 5, 1938.]

[80 Pac. (2d) 955.]

MARICOPA COUNTY, ARIZONA; G E O R G E FRYE, JOHN A. FOOTE and C. W. PETERSON, as Members of and Constituting the Board of Supervisors of Maricopa County, Arizona; and JIM BRUSH, as Assessor of Maricopa County, Arizona, Appellants, v. TRUSTEES ARIZONA LODGE No. 2, F. & A. M., a Fraternal Organization; GRAND LODGE, KNIGHTS OF PYTHIAS OF ARIZONA; G. J. C O N R A D, Guardian of the Estates of ELWIN MILLER, RICHARD MILLER and LAWRENCE MILLER, Minors; SAMUEL GRAHAM; JOHN GRAHAM; O'CONNELL BROTHERS, INC., a

Corporation; LEO V. SEAMAN; H. B. ST. CLAIRE; EDMUND W. WELLS; JOHN M. WILLIAMS and BARBARA WILLIAMS, Husband and Wife; JOHN B. GANNON and EMMA B. GANNON, Husband and Wife; NEIL B. McGINNIS COMPANY, a Corporation; KORRICK DRY GOODS COMPANY, a Corporation; H. G. WATSON; COULTER MOTOR COMPANY, a Corporation; DORRIS-HEYMAN FURNITURE COMPANY, a Corporation; PACKARD PHOENIX MOTOR COMPANY, a Corporation; STUCKEY AUTO SUPPLY COMPANY, a Corporation; L. G. VINSON and B. M. PRINGLE, Doing Business as a Co-partnership Under the Name of VINSON AND PRINGLE; ARIZONA LIVESTOCK COMPANY; LLOYD B. CHRISTY as Guardian of the Estates of GEORGETTE BARSA AND GEORGE W. BARSA, Minors; ALMA GRACE SEARS and W. P. SEARS, Husband and Wife; FANNIN HARDWARE COMPANY, a Corporation; CHRIS JOHNSON; PHOENIX AUTO SUPPLY COMPANY, a Corporation; FRANCIS T. ASHBROOK; FRED L. COOLEY; L. D. CROOK; CHARLES E. GOETZ; HARVEY S. HARELSON; JOHN LANDON and MATILDA LANDON, Husband and Wife; ARIZONA COTTON GROWERS FINANCE COMPANY, a Corporation, Appellees.

Mr. John W. Corbin, County Attorney, Mr. Lin H. Orme, Jr., Deputy County Attorney, Mr. Allan K. Perry, Special Counsel, for Appellants.

Messrs. Snell, Strouss & Salmon, and Mr. Terrence A. Carson, for Appellees.

ROSS, J.—This is an action to determine whether revenue laws of the state require the owner of intangible personal property to pay taxes thereon.

The plaintiffs, residents of Maricopa county, brought the action alleging that they were not the owners of real estate but that they are the owners of mortgages on real estate, chattel mortgages, and of conditional sales contracts in Maricopa county, and that defendants, members of the board of supervisors

of said county, have ordered the assessor of said county to list and assess such intangibles for the tax years 1935, 1936 and 1937 and to collect the taxes for 1935 and 1936 at the rate fixed for 1935 and for 1937 at the rate for 1936. No serious contention is made as to the form of the action, both parties seemingly being anxious to have determined whether under the statutes plaintiffs' property is liable for taxes. While the relief in part asked was an injunction against the said defendants to restrain them from assessing plaintiffs' property, it may be said to be in fact an action for a declaratory judgment. We shall so treat it.

The defendants demurred to the complaint on the ground that it failed to state a cause of action. This demurrer was overruled and the defendants electing to stand thereon judgment was entered for the plaintiffs enjoining the defendants from listing for taxation plaintiffs' said intangible property, and the appeal is from such ruling.

The question is one of construction of the taxation laws of the state.

The legislature has divided property liable to taxation into real estate and interests in real estate and into personal property and has subdivided personal property into tangibles and intangibles. Section 3067, Rev. Code 1928.

It is provided by the Constitution that all property in the state, not exempt under the laws of the United States or under the state Constitution or by law enacted pursuant to the state Constitution, shall be subject to taxation, to be ascertained as provided by law. Section 2, Art. 9.

Section 3066, Revised Code of 1928, enumerates the exemptions from taxation, which are immaterial to the issue in this case.

Section 11, article 9 of the Constitution, provides that the manner, method and mode of assessing, equal-

izing and levying taxes in the state of Arizona shall be such as may be prescribed by law.

The division of personal property liable to taxation into tangibles and intangibles without any provision for the listing and equalizing of intangibles or any method for collecting the taxes thereon is what, no doubt, has confused the taxing officers of the county and state and caused them to neglect or refuse to assess property of the kind involved in this case.

We may say here that, in a general way, since the revision of the laws in 1887 up to the present time, the statutes designating property as taxable in their terms have been practically the same, and since 1887 none of the intangible property of the territory or state has ever been assessed or has ever paid taxes.

The plaintiffs' property is included in the class of property designated as intangible and is subject to taxation, like all other property, at its cash value. 61 C. J. 192, sec. 156. The law ought to authorize it to be assessed and valued and equalized, the same as tangible personal property or real estate. It should provide that it be listed by the county assessor and described in the assessment roll prepared by such officer for the use of the local board of equalization in equalizing valuations.

The equalization of taxes is as essential to a valid assessment as the listing and valuing of the same by the assessor. Beginning with the Laws of 1877, chapter 33, Complied Laws of that year, down to the present time the taxpayer has been given the right to appear before equalizing boards and protest his assessment as made and returned by the assessing officer. Since statehood, or 1912, that right, we take it, is a constitutional right, for when the organic law provides that the manner, method and mode of assessing, *equalizing* and levying taxes shall be such as the law prescribes, it is tantamount to saying that there must be

a procedure or method for equalizing valuations of property before exacting the tax.

The taxation statutes at present require, and in the past have required, the assessor to enforce the collection of personal property taxes upon a valuation fixed by him at the time he makes the assessment, unless in his judgment the taxpayer is the owner of real property of sufficient value to pay the taxes on both his real and personal property so assessed. If the assessor's judgment is that the taxpayer's real property is adequate to meet the taxes on both classes, he lists the personal property on his assessment roll and it is equalized as other property. Section 3081, Id. When the taxpayer has no realty, or it is in the judgment of the assessor insufficient to insure his personal property tax, he must submit to the value fixed and pay the tax or have his property seized and sold. In such case there is no appeal under the statute to the courts from the valuation of the property fixed by the assessor. However, if the real property owner is dissatisfied with the valuation of his personal property as fixed by the board of equalization of his county, he is given the right of appeal to the superior court of the county and to offer evidence that his property has been overvalued, and, if he establishes that as a fact, to have the valuation reduced. Section 3090, Id.

The taxpayer, except the one without realty, dissatisfied with the amount of his assessment as fixed by the state tax commission or the state board of equalization may appeal therefrom and, upon a showing in the court that his property has been assessed excessively, secure the judgment of the court reducing it to its cash value.

Thus the taxpayer's right to a hearing before the board of equalization and his right of appeal to the courts from the decision of such board is dependent

upon whether he owns real estate of a value sufficient in the judgment of the assessor to pay the taxes on both his realty and personalty, otherwise, although his intangibles may be many and very valuable, he is denied a hearing as to their cash value.

██ Property taxes are not personal debts; they are enforced contributions to the state or taxing unit for protection and unless otherwise provided are collectible only from the property assessed. 26 R. C. L. 25, sec. 11. Under our statutes, taxes on personal property may be enforced as against the taxpayer's general property but they are not made *debts* of the owner in the general sense of that word. The statutory procedure for their collection is therefore exclusive. *Board of Commrs. of Ness County* v. *Hopper,* 110 Kan. 501, 204 Pac. 536. Under section 3081, *supra,* the proceedings to collect taxes on personal property when the taxpayer has insufficient realty to pay his taxes is by distraint and sale by the assessor. Under section 3112 the method prescribed is by distraint and sale by the county treasurer. The whole context of both these sections refers to tangible personal property—property that can be seen, seized and exhibited at public auction.

█ Intangibles like instruments and securities for the payment of money, such as bonds and promissory notes, are not the subject of seizure and sale under execution in the absence of express statutory authority. 23 C. J. 326, sec. 47. Neither are book accounts, interest in insurance policies, judgments and shares of stock, as these are all choses in action. 23 C. J. 327, secs. 48, 49 and 50. The taxing statutes do not provide for the seizure and sale of intangibles for taxes assessed against them. In section 3081, *supra,* it is provided that when a person has been assessed taxes for personal property and has insufficient real prop-

erty to pay them, and the assessor is unable to find sufficient property to satisfy the tax, the owner may be cited in a proceeding of a supplemental nature and if upon a hearing it is determined he has property or money with which to pay the tax the court may cite him for contempt if he fails or refuses to pay the tax to the assessor.

Under section 3112, *supra,* there is no provision for supplemental proceedings as provided in section 3081, *supra,* and the only action permissible to the treasurer, acting as tax collector, is to seize and sell the owner's tangible property. Thus we have this situation: The legislature has named as subject to taxation real estate and personal property, both tangible and intangible, but has failed to provide a method of equalizing intangibles and also an adequate method of procedure to collect the tax on intangibles when the owner is not possessed of realty sufficient in the judgment of the assessor to pay both taxes.

In other provisions of the taxation statutes the legislature has specifically designated intangibles that are to be assessed and others that are not. Thus shares of stock, which are clearly intangibles, in corporations generally are exempted from taxation and the capital or assets of the corporation are assessed. Section 3069, Revised Code of 1928 as amended by chapter 110, Laws of 1931. In the same section of the statute it is provided the shares of stock in banks, building and loan associations and finance corporations are assessable to the shareholders. There is nothing in the statute requiring the assessment of the intangibles of railroads, telephone and telegraph companies, express companies and private car lines. The latter two are taxed on their income and nothing else. Articles 8 and 9, chapter 75, Revised Code of 1928 (secs. 3139–3151). Railroads are assessed upon their entire

line within the state, including franchises, intangible values, right of way, roadbed, rolling stock, buildings, telegraph lines and all other property, real and personal, exclusively used in the operation of the railroad. Section 3153, Id.

Telephone and telegraph companies are assessed on all their property, franchises and intangible values thereof. Section 3157, Id.

Thus the right of these companies to do business in the state, their good will and tangible properties are made taxable. These corporations are assessed by the state tax commission and it is required that its equalized assessment roll certified to the boards of supervisors of the counties shall contain, among other things,

"the total number of miles of railroad within the county, and the value thereof; the total number of miles of telephone and telegraph lines within the county, and the value thereof." Section 3091, Id.

If these companies own stocks and bonds of other companies, or have notes or mortgages, bills receivable or other intangibles, they are not required to return these or to pay taxes thereon, since the taxing authority extends only to such property as is named as taxable.

It is well settled that the situs of intangibles for purposes of taxation is the domicile of the owner and not that of the debtor. Therefore, notes, mortgages, bonds, or other intangibles of citizens of this state secured by property located here but in the ownership of nonresidents have a situs for taxation purposes where the owner resides. The property in such instruments and securities is at the domicile of the owner and not in Arizona and may not be taxed here. In *Blodgett* v. *Silberman*, 277 U. S. 1, 48 Sup.

Ct. 410, 72 L. Ed. 749, 757, the court, speaking through Mr. Chief Justice TAFT, said (page 413):

"At common law the maxim '*mobilia sequuntur personam*' applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evidencing the same are found in the state of the domicile or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not."

See, also, *Territory* v. *Delinquent Tax List,* 3 Ariz. 179, 24 Pac. 182. The only exception to this rule, we believe, is where the intangible property has acquired a business situs in the state, that is, where it is left with an agent who invests and reinvests it in the carrying on of a regular business. Our legislature, however, has made no provision giving such property a business situs.

Thus, if the law is as defendants contend, the resident owner of a mortgage or conditional sales contract of property located in Arizona would be required to pay taxes thereon, whereas the nonresident owner of the same kind of paper would not be assessable. The actual operation of the law would at least be unequal.

For the above reasons, and perhaps others, the county assessors and the boards of supervisors of the different counties and other executive and administrative officers of the Territory of Arizona from the year 1887 until 1912, did not list and assess or equalize intangible property in the state. At the first session of the legislature after statehood there was created the state tax commission, consisting of three

members, which also constituted a state board of equalization, and this commission, it is provided in section 3060 of the Revised Code of 1928, has

"full power to classify all property and shall have general supervision of the system of taxation throughout the state; its decision upon all matters pertaining to the assessment of property and the valuing and listing of the same, shall be final, except as otherwise provided by law."

For over twenty-six years, although the personnel of this commission has changed from time to time, no effort has been made to tax intangible property. County assessors and boards of supervisors of the different counties have pursued the same course with reference to such property as they did prior to statehood. The county and state legal departments and the executive departments have by their silence acquiesced in such construction of the statute. Citizens of the state, relying upon the action or nonaction of taxing authorities, have made investments in mortgages and notes and bonds and other intangibles upon the assumption and under the belief that they were not taxable. It is a matter of general knowledge, and of which we think we can take judicial notice, that many of these securities and instruments at the present time bear a rate of interest less than the taxes they will have to pay if defendants' contention is sustained. If the defendants' contention is sustained the result can readily be seen. Those persons domiciled in Arizona who have made investments will, as soon as possible, convert them into cash and seek investments elsewhere, and no other persons with money will take their places. The state and its different political subdivisions would lose taxes in the long run instead of increasing their revenues.

What can be said of the attitude of the executive department in refusing to assess intangibles for more than fifty-one years, although the taxation statutes during that whole period have been practically the same? Judge COOLEY, the author of a leading work on taxation, in *Westbrook* v. *Miller*, 56 Mich. 148, 22 N. W. 256, used this very pertinent language (page 257):

"When, in the performance of executive duties, it becomes necessary for the executive department to construe a statute, great deference is always due to its judgment; and the obligation is increased by the lapse of considerable time before its acts are called in question."

In *Copper Queen Consol. Min. Co.* v. *Territorial Board of Equalization*, 9 Ariz. 383, 84 Pac. 511, this court had before it the construction of a statute conferring upon the territorial board of equalization certain powers to classify and revalue assessments made by county assessors, and we followed the construction of the statute in that respect adopted by the board of equalization, saying (p. 398):

"Were such doubt well founded, we should feel constrained to follow the long-continued interpretation given by the territorial board of equalization to the statutes in harmony with this view. For 18 years, ever since its creation, that board, without question from any source, and upon the advice of numerous Attorneys General, has raised and lowered valuations of property within the several counties of this territory, by classes. This court will take judicial notice of this practical construction. *Bloxham* v. *Consumers' Electric Light & Street R. R. Co.*, 36 Fla. 519, 18 So. 444, 29 L. R. A. 507, 51 Am. St. Rep. 44. We are not bound to be ignorant of that which every intelligent taxpayer in Arizona knows. *State* v. *Kelly*, 71 Kan. 811, 81 Pac. 450, 70 L. R. A. 450 [6 Ann. Cas. 298].

"This construction of these statutes by the board on whom was imposed the duty of executing them, would resolve such a doubt in favor of that construction. *United States* v. *Finnell,* 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890; *Schell* v. *Fauche,* 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1040; *United States* v. *Alabama, G. S. R. Co.,* 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134; *United States* v. *Philbrick,* 120 U. S. 52, 7 Sup. Ct. 413, 30 L. Ed. 559. In construing the intent of the Legislature, it is a significant fact that with such long-continued construction by such officials before it, the Legislature, in its revision of the law in 1901, re-enacted the provisions without substantial change."

The different legislatures that have met since 1887 have passed amendments to the taxing statutes; have authorized and approved several revisions of such laws, knowing all the while the authorities were not assessing and taxing intangibles, and have left the statutes unchanged. In 1933, however, the legislature did enact a law taxing intangibles and nowhere therein did it recognize, by reference or otherwise, that we have ever had a law taxing that kind of property. Chapter 16, First Special Session, Laws of 1933. Unfortunately that act did not give to the taxpayer an opportunity to be heard on his assessments and for that reason it was declared unconstitutional. *State Tax Com.* v. *Shattuck,* 44 Ariz. 379, 38 Pac. (2d) 631. Bills have been introduced in all, or practically all, the legislatures that have met since then to tax intangibles but none of them has passed. Thus for fifty years, under a construction of the executive and legislative departments, we have had no law to tax intangibles, although it is contended by defendants we have had, and now have, such a law. While there may be some doubt as to the correctness of the construction placed upon the law by those whose duty it has been to execute it, we think, because it has been recognized

for so many years as settled law, it is better that the legislature change it than that we disturb vested rights by sustaining defendants' position, especially in view of the analyses of the law we have heretofore given. The conclusion that we have reached is not in conflict with what we said in *State Tax Com.* v. *Shattuck, supra,* or in *People's Finance & Thrift Co.* v. *Pima County,* 44 Ariz. 440, 38 Pac. (2d) 643. In those cases we referred to sections 3067 and 3068, Revised Code of 1928, and said that thereunder all property, tangible and intangible, with certain exemptions, was taxed upon an *ad valorem* basis at its full cash value. We did not go into an examination of the taxation statutes with a view of determining whether the legislature had provided a method for equalizing valuations of intangibles or whether the procedure therein to collect the tax was adequate when applied to intangibles.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.