291 P.2d 791

H. S. McCLUSKEY and Helen B. McCluskey, et al., Appellants,

v.

C. L. SPARKS, Maricopa County Assessor, and James T. O'Neil, James G. Hart and James E. Lindsay, acting as members of the Maricopa County Board of Equalization, Appellees.

No. 6153.

Supreme Court of Arizona.

Dec. 20, 1955.

H. S. McCluskey, Phoenix, for appellants.

Wm. P. Mahoney, Jr., County Atty., and Charles L. Hardy, Deputy County Atty., Phoenix, for appellees.

WINDES, Justice.

H. S. and Helen B. McCluskey, together with a large number of other plaintiffs, filed a complaint against C. L. Sparks, county assessor of Maricopa county, and James T. O'Neil, James E. Lindsay and James G. Hart, as the board of supervisors and county board of equalization of Maricopa county. The complaint seeks to enjoin the defendants from extending property of the plaintiffs on the tax roll for the year 1955. Upon motion of defendants, the court dismissed the complaint upon the ground that plaintiffs had an adequate remedy at law under the statutes of the state and particularly under section 73–419, A.C.A.1939. Plaintiffs appeal. The parties will be designated as they appear in the lower court.

The complaint occupies forty pages of the abstract of record and contains many confusing, nonessential allegations. Reading the entire document one can gather that there is alleged that the county assessor prepared a series of maps or plats of certain areas lying between 7th and 32nd Streets on East McDowell Road and spot areas on East Thomas, East Osborn, East Indian School and East Camelback Roads east of 7th Street. It is further alleged that plaintiffs are owners of property within these areas. The complaint states that the assessed values of plaintiffs' properties were increased from 300 to 1600 percent over previous assessments whereas

the values of like or similar properties in the county were not increased; that the assessor arbitrarily used some chart, plan or method, table or tables, in valuing plaintiffs' properties and that such method or charts were applied solely to increasing the valuation of plaintiffs' property. The effect of these allegations is that by using a special method of arriving at the assessed values of plaintiffs' properties, which method was not used in valuing other properties of the same class, there resulted a disproportionate increase in the valuation of plaintiffs' property as compared with the assessed value of other like properties in the county. It is further alleged that other properties are assessed at from five to forty percent of full cash value; and that the assessor deliberately, consciously, intentionally and systematically singled out these spot areas for this different method of arriving at the assessed value of property therein.

The complaint alleges that plaintiffs appeared before the defendant county board of equalization seeking to have the values equalized and presented evidence in support of their contention; that one member of the board voted to disapprove the assessments for the ₐexpressed reason that he questioned the equity of increasing values in spotted areas while permitting other sections to escape and that it was unfair to send values soaring in one section while permitting values in other areas at absurdly low levels; that another member of the board approved the assessments of the assessor for the stated reason that the

values were equitable in relation to the cash value of the properties but that he had a grave doubt as to the legality of increasing valuations in one section while permitting those in comparable areas to remain unchanged. This member further stated that there should be a court determination of the matter and the only way this could be accomplished was to approve the valuations set by the assessor. The third member voted to approve the valuations. It is alleged that the newspaper quoted him as giving a reason for his vote; however, this is no allegation of fact but merely an allegation of hearsay.

From the foregoing it may fairly be said that the alleged statements of two members of the board are susceptible of the interpretation that at least a majority thereof, with knowledge of the methods pursued by the assessor, recognized a deliberate and intentional fixing by the assessor of unequal values of plaintiffs' property as compared with the values fixed for other like properties in the county.

■ Defendants say that the trial court correctly dismissed the complaint for the reason that section 73–419, A.C.A.1939, provides plaintiffs with an adequate remedy at law for the alleged unequal assessment of their properties. This section makes provision for an appeal to the superior court from the action of the county board of equalization when a taxpayer is dissatisfied with the amount of his assessment. To determine whether this remedy

is adequate we must observe what relief the court may grant under such an appeal. In availing himself of this appeal remedy the taxpayer must pay under protest the full amount of the tax levied. Under the provisions of section 73–110, A.C.A.1939, he may only prove the full cash value of the property in question and the court is limited to finding the full cash value and to rendering judgment for the payment of the tax on that basis, whether it be more or less than the value fixed by the taxing officials. Plaintiffs' lawsuit in this case is based upon the alleged proposition that plaintiffs have been discriminated against by valuing other properties at below full cash value and, by the use of a method different from that used in valuing other properties, assessing or attempting to assess plaintiffs' properties at a greatly disproportionate valuation. Deliberate and systematic undervaluation of plaintiffs' property at a figure greatly in excess of the undervaluation of other like properties amounts to a violation of the Arizona constitution, article 9, section 1, which requires that all taxes "shall be uniform upon the same class of property within the territorial limits of the authority levying the tax * * *" and offends the equal protection clause of the Fourteenth Amendment to the constitution of the United States. This is so even though the statute requiring assessment of property at full cash value is violated. In such event the constitutional mandate requiring equality in taxation will prevail over the statute and an effort must be made, under such circumstances, to equalize on an undervaluation basis. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979.

■ It is plain that when the issue to be tried is discrimination calling for proof of systematic and intentional disproportionate undervaluation, the appeal remedy prescribed by sections 73–419 and 73–110, supra, is no remedy at all for the reason that the issues concerning such a discrimination could not be tried and decided under the appeal remedy. Western Union Telegraph Co. v. Tax Commission of Ohio, D. C., 21 F.2d 355. Cf. Hillsborough Township v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358. The plaintiffs have no adequate legal remedy and the trial court erred in dismissing the complaint on the basis of an adequate legal remedy.

■ Courts hesitate to interfere with the taxing processes employed by taxing officials of a state. Consequently, before the injunctive powers of a court of equity are allowed to be used to this end, the conduct of such officials in valuing and assessing properties must be such as amounts to legal fraud or the equivalent thereof. Rowley v. Chicago & N. W. Ry. Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222. To place such conduct in this category, there must be something more than a dispute between the taxpayers and the taxing officials as to the valuation placed upon their properties. It is not enough if the officials merely made a mistake in judging value. In this class of

cases the court will not substitute its judgment for that of the equalizing board. Before the court will interfere, it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct and not mere error in judgment. Chicago Great Western Ry. Co. v. Kendall, 266 U.S. 94, 45 S.Ct. 55, 69 L. Ed. 183.

■ The complaint alleges in effect that the assessor systematically and intentionally used a system or method of reaching the value of plaintiffs' properties different from the method or system used in arriving at the values of other like properties and that, as a result thereof, disproportionately excessive values were placed on plaintiffs' properties and that the board of equalization, having knowledge of this, refused to correct the inequality. We think that if these charges against the assessor are true and if it be true the board, being advised of the situation, refused to exercise its powers as a board of equalization in an effort to correct the alleged inequality, the result would be a legal fraud or the equivalent thereof upon the plaintiffs. Assessing officials cannot systematically and intentionally use different rules for measuring the value of property of the same class if by the use thereof great inequality results. Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78; Bank of Arizona v. Howe, D.C., 293 F. 600. However, different modes of assessment on the same class of property will not render the same invalid unless in fact they operate to produce discriminatory inequality. Charleston Federal Savings & Loan Ass'n v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857. The mere fact that the assessing officials believed their conduct was valid does not render it less vulnerable to attack as discriminatory. Cumberland Coal Co. v. Board of Revision of Tax Assessments, 284 U.S. 23, 52 S.Ct. 48, 49, 76 L.Ed. 146. In that case the supreme court of the United States used this language:

"There is no question that the assessments under review were made pursuant to a deliberately adopted system. The case is not one of mere errors in judgment in following a proper method (Citing cases), but one where the challenged discrimination resulted from a plan of assessment which was none the less systematic and intentional because of belief in its validity."

■ Defendants present the proposition plaintiffs are attempting to enjoin the execution of a public statute in violation of section 26–104, A.C.A.1939. This section does prohibit the use of injunction to prevent the execution of a public statute by officers of the law. This case, however, does not come within the prohibition of the statute. Plaintiffs are not seeking to enjoin the assessor from assessing their property or the board of equalization from equalizing the same in accordance with the statutes applicable thereto. They are seeking to require these officials to comply with the statutes and constitutions of Arizona and

of the United States. This court has held that the taxing officials cannot under the pretense of executing a taxing statute impose taxes not authorized thereby. Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 163 A.L.R. 261.

It is our considered opinion that there are sufficient allegations of fact in the complaint which, if true, state a cause of action for injunctive relief and that the plaintiffs have no adequate remedy at law.

Judgment reversed with instructions to reinstate the complaint.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.