327 P.2d 295

C. L. SPARKS, Maricopa County Assessor, and James T. O'Neil, James G. Hart, and James E. Lindsay, acting as members of the Maricopa County Board of Equalization, Appellants,

v.

H. S. and Helen B. McCLUSKEY et al., Appellees.

No. 6385.

Supreme Court of Arizona.

June 18, 1958.

Charles Stidham, Maricopa County Atty., James J. Caretto, Deputy County Atty. and Terrence A. Carson, Special Counsel, Phoenix, for appellants.

H. S. McCluskey, Phoenix, for appellees.

WINDES, Justice.

Appellees together with a number of other parties sued the tax assessor and county board of equalization of Maricopa county seeking an injunction restraining the extension on the tax roll of taxes proposed to be levied against plaintiffs' properties for the year 1955. The complaint originally was dismissed and this court reversed with directions that it be reinstated. McCluskey v. Sparks, 80 Ariz. 15, 291 P.2d 791, 794. The case is here again after trial resulting in judgment for the plaintiffs.

In returning the case for trial we said:

"The complaint alleges in effect that the assessor systematically and intentionally used a system or method of reaching the value of plaintiffs' prop-

erties different from the method or system used in arriving at the values of other like properties and that, as a result thereof, disproportionately excessive values were placed on plaintiffs' properties and that the board of equalization, having knowledge of this, refused to correct the inequality. We think that if these charges against the assessor are true and if it be true the board, being advised of the situation, refused to exercise its powers as a board of equalization in an effort to correct the alleged inequality, the result would be a legal fraud or the equivalent thereof upon the plaintiffs."

What we must decide on this appeal is whether the plaintiffs did make the proof required by the foregoing statement.

In the taxable year in question, 1955, the assessor selected the frontage on the following areas: East McDowell road from Seventh street to 33rd street; East Thomas road from 15th street to 18th street; and East Indian School road from 16th street to 28th street. Plaintiffs' properties are located on these streets which had been zoned for commercial use. In arriving at the taxable valuation of the lands in these areas the assessor used a certain formula designated as "land depth curve". It is quite difficult to determine from the evidence exactly how this formula was operated. Apparently, from illustrations in evidence an estimate of average selling prices

per front foot is established. This value is calculated up or down depending upon the depth of the lot over or under 100 feet. According to depth the established price per front foot is divided by a percentage factor to get what is called unit foot price. The unit foot is multiplied by a percentage factor varying according to the depth of the properties to which it is applied to get the assessed valuation.

The undisputed evidence shows and the court found as a fact that on the streets in the areas so selected by the assessor and upon which the land depth curve formula was used, the land values were increased by several hundred per cent over the previous year. There is record evidence that these increases varied from at least 300 to 1600 per cent. There was evidence and the court found that generally the assessed value of properties of like class in the county were not proportionately increased and the court found that generally assessed values for the prior year were merely carried forward with the exception of the areas selected as heretofore related and acreages converted into new subdivisions, areas between 7th street and 7th avenue south of Fillmore and north of Madison street in Phoenix, a limited number of shopping center areas and a limited number of lots or parcels in the towns of Tempe, Mesa and Glendale. There was evidence to the effect and the court so found that in using this formula in the

areas involved and in arriving at the values, no influence was allowed nor distinction made as to whether the respective properties were for commercial, semi-commercial or residential use; whether they were vacant lots or the use limited by zoning ordinances. The evidence was that, with the exception of a few isolated shopping areas, this formula was used only in the areas in which plaintiffs' properties are located and there can be no question from all the evidence but that most of the properties in the county of like class as those of plaintiffs were assessed at values arrived at by an entirely different method than that used in fixing the value of plaintiffs' properties.

■ It likewise appears from the evidence and the court found that members of the board of supervisors sitting as a board of equalization recognized that the areas in which plaintiffs' properties are situated had been disproportionately increased as compared with other areas throughout the county. One member voted against approval for this reason; the others voted for approval apparently for the purpose of establishing a foundation for a court test as to the validity. One member gave as his reason for approval that the assessments were reasonable in relation to the cash values of the property. This of course is no attempt at equalization for we judicially know that no properties are assessed at full

cash value and the assessor testified that properties of this class were assessed at approximately 28 percent of full cash value. It is clear that the board of equalization made no effort to attempt any equalization of a recognized disproportionate evaluation in the areas where the land depth curve formula was used.

■ It must be said that the assessments in the areas involved where plaintiffs' properties are located were made intentionally and systematically and there was evidence such assessments were disproportionately excessive and that the board of equalization with knowledge thereof refused to correct or attempt to correct the inequality. They are thus placed within the category of illegal assessments because of their discriminatory character. There is no occasion for us to expressly approve or disapprove the formula which created this situation. There is no evidence that its uniform use would result in any discrimination. It is the limited use in this case that produced the illegal result.

■ Appellants say plaintiffs did not sustain the burden of proving actual fraud. There is no necessity of proving actual fraud. There is no indication of any dishonest motives on the part of any of these officials. We are satisfied there were none but if the result of these intentional acts is discrimination the assessments cannot

stand irrespective of honest motives. Mc-Cluskey v. Sparks, supra. Nor is it a question of mere misjudgment of the assessing officials as to values; it is a question of an intentional overassessment of a portion of a certain class of property in specified areas as compared with assessment of like property in the rest of the county.

■ The contention is made that this is a long term program to bring to date all valuations in Maricopa county. There was evidence that for the year 1956 the frontage on a few more streets were brought into the program and it was contemplated sometime in the future to bring in the frontage on other streets, specifically North and South Central avenue, North 7th avenue and East and West Van Buren street. The evidence does not indicate how many years might elapse before the program would be complete and equalization effected. We cannot subscribe to the proposition that grossly inequal values by the use of a specific method of assessment may be placed on a small portion of a class of property and remain subject to the disproportionately excessive value for an indefinite number of years in the future until the taxing officials can get around to using the same method upon the other like properties.

Judgment affirmed.

UDALL, C. J., and PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.