377 P.2d 770

**SOUTHERN PACIFIC COMPANY,**
a corporation, Appellant,

v.

**COCHISE COUNTY et al., Appellees.**

No. 7188.

Supreme Court of Arizona.

En Banc.

Jan. 9, 1963.

Rehearing Denied Feb. 11, 1963.

Evans, Kitchel & Jenckes, Phoenix, Robert L. Pierce, San Francisco, Cal., for appellant.

Robert W. Pickrell, Atty. Gen., William Clark Kennedy, Chief Asst. Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., and Stanley Z. Goodfarb and Leslie C. Hardy, Sp. Counsel, Phoenix, for appellees.

STRUCKMEYER, Justice.

The Southern Pacific Company brought this action in the superior court seeking to recover taxes paid under protest for the first one-half of the fiscal year 1959 and to enjoin future discriminatory assessments arising from alleged systematic undervalua-

tion practices by appellees. From a judgment granting a motion to dismiss `appellant's complaint this appeal has been taken.

· Appellant is a Delaware corporation owning and operating an interstate railroad system, a portion of which is located in the appellee counties of the state. In June 1959 the State Tax Commission assessed the taxable property of appellant in the state at $65,397,243.50. Pursuant to the applicable statutes appellant appeared before the State Tax Commission acting in its capacity as the State Board of Equalization and objected to the assessment. It offered to show that the full cash value of its property in Arizona was $73,000,000 and that its property was assessed at not less than 89 per cent of full cash value but that other property subject to assessment by the respective county assessors was assessed at no more than 20 per cent of full cash value on the average. The Board was requested to equalize the assessment by either lowering it to the average of other properties or by raising other assessments to full cash value. Appellant alleged that the Board wilfully, intentionally and fraudulently rejected its request for equalization refusing to take any action. Thereafter the taxes assessed were paid to the respective county treasurers accompanied by written protests. In January, 1960, appellant commenced suit seeking to recover a portion of the taxes paid and to enjoin defendants from making similar discriminatory assessments in the future.

The State Tax Commission in its capacity as State Board of Equalization is invested with the duty to equalize the valuation and assessment of property throughout the state. Its power of equalization is practically unlimited. To that end it may equalize the assessment of all property between persons of the same assessment district, between cities and towns in the same county,. and between different counties of the state and the property assessed by the Commission in the first instance, A.R.S. § 42–141.

"The equalization of taxes is as essential to a valid assessment as the listing and valuing of the same by the assessor. Beginning with the laws of 1877, Chapter 33, Complied Laws of that year, down to the present time the taxpayer has been given the right to appear before equalizing boards and protest his assessment as made and returned by the assessing officer. Since statehood, or 1912, that right, we take it, is a constitutional right, for when the organic law provides that the manner, method and mode of assessing, *equalizing* and levying taxes shall be such as the law prescribes, it is tantamount to saying that there must be a procedure or method for equalizing valuations of property before exacting

the tax." Maricopa County v. Trustees Ariz. Lodge, 52 Ariz. 329, 80 P.2d 955.

The Board of Equalization, having plenary power to consider and correct discriminatory practices presented to it, has the positive duty to exercise such power when its authority is invoked by one claiming discriminatory assessments.

■ It is urged that appellant has not followed the proper remedy afforded to it by the statute. A.R.S. § 42–146, subd. A requires:

"Any taxpayer dissatisfied with the amount of his assessment as fixed by the state tax commission, or as reviewed by the state board of equalization, may appeal therefrom as provided in this article and not otherwise."

Where the "amount of the assessment" is questioned, this section is exclusive. Valley National Bank of Phoenix v. Apache County, 57 Ariz. 459, 114 P.2d 883.

■ Appellant concedes that it has not complied with the statutory procedure. Fundamentally, its position is that by the inequality in assessments, namely 89 per cent of full cash value as against 20 per cent of full cash value, it bears an unfair and discriminatory share of the tax burden. Thus, while superficially it would appear that appellant's complaint is with the "amount of its assessment", the issue presented actually encompasses a broader

sweep. It is sought to compel the State Board of Equalization either to equalize all assessments in the respective counties at full cash value or to equalize appellant's assessment at an amount commensurate with the valuations of property assessed by the county assessors, and, to recover taxes paid under protest occasioned by the unequal treatment.

The statutory appeal under § 42–146, supra, is limited to a determination by the superior court of the valuation of the applicant's property.

"If the court finds that the assessment is excessive, the court shall find the full cash value of the property and render judgment for appellant and against the county. If the court finds the assessment represents the full cash value of the property, the action shall be dismissed with costs against appellant. If the court finds the assessment is below the full cash value of the property, the judgment shall be for the county and against appellant for the costs of the appeal and the taxes due on the property as if it had been originally assessed at its full cash value." A.R.S. § 42–147, subd. C.

In the statutory appeal the superior court is only authorized to raise appellant's assessment from 89 per cent of full cash value to 100 per cent, an existing difference admitted by appellant. Such a judgment would not

only perpetuate but would increase the existing inequality of which appellant complains.

We said in McCluskey v. Sparks, 80 Ariz. 15, 291 P.2d 791, where the complaint was of discrimination in assessment of properties as compared to other like properties in a county:

"It is plain that when the issue to be tried is discrimination calling for proof of systematic and intentional disproportionate undervaluation, the appeal remedy prescribed by sections 73–419 [now A.R.S. § 42–245] and 73–110, supra, [now A.R.S. § 42–146] is no remedy at all for the reason that the issues concerning such a discrimination could not be tried and decided under the appeal remedy." 80 Ariz. 19, 291 P.2d 793.

Here, it is equally plain that the statutory procedures are inadequate, in fact, providing less than no remedy at all. Appellant is compelled to either seek relief in an original action in the superior court, as it has, or it can not escape the consequences of the asserted systematic undervaluation practices.

■ Appellees question whether the allegations of appellant's complaint asserting systematic and intentional discrimination states a claim for relief urging that the state may properly classify the subjects of taxation, treating such subjects differently and that the legislature has created such a classification in the case of railroads by A.R.S. Title 42, Chapter 4, Art. 4. There can be no doubt that the state may classify the subjects of taxation. Brophy v. Powell, 58 Ariz. 543, 121 P.2d 647; Powell v. Gleason, 50 Ariz. 542, 74 P.2d 47, 114 A.L.R. 838; Peoples Finance & Thrift Company v. Pima County, 44 Ariz. 440, 38 P.2d 643; State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631. We said in Powell v. Gleason, supra:

"In the absence of a constitutional prohibition, the Legislature of a state may classify property for taxation. Our Constitution not only does not prohibit classification, but, as a matter of fact, implies that this can and will be done. Section 1, art. 9, Const. of Arizona." 50 Ariz. 551, 74 P.2d 52.

The language of the Constitution, Sec. 1, Art. 9, A.R.S. provides "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." This does not mean that taxes shall be uniform on all classes of property. Property of the same value but of different character need not be taxed the same. Yellowstone Pipe Line Company v. State Board of Equalization, 138 Mont. 603, 358 P.2d 55, cert. denied, 366 U.S. 917, 81 S.Ct. 1095, 6 L.Ed.2d 241. But we need not pause to consider further whether the legislature could establish a classification permitting the assessment of appellant's proper-

ty at a greater percentage of full cash value than other property throughout the state for the preliminary question of whether the legislature has done so must be answered in the negative. It has not.

█ A casual reading of the articles of the Revised Statutes on taxation discloses a general legislative scheme that assessments on all species of property shall be at full cash value. By A.R.S. § 42–227 "All taxable property shall be assessed at its full cash value." By A.R.S. § 42–123 the State Tax Commission is charged with exercising general supervision over the administration of the tax laws of the state and over county, city and town assessors and all local boards of levy and assessment "for the purpose of insuring that all assessments of property are made at its full cash value, and shall require assessors and county boards of equalization to assess all property at its full cash value." Again, by A.R.S. § 42–143 the State Board of Equalization is required to examine and compare the abstracts of assessments of the property in the several counties and "equalize them so that all taxable property is assessed at its full cash value."

There are admittedly some specific legislative exceptions from the uniform general scheme, notably Machinery and Equipment of Manufactories, A.R.S. § 42–228, Producing Oil and Gas Interests, A.R.S. § 42–227.-01 et seq. Railroads have not, however, been excluded from the general uniform

scheme of assessment. The classification to be found in A.R.S. § 42–761 et seq. is principally a special method by which the value of railroad properties may be determined. There the legislature has directed that the State Tax Commission shall meet to appraise and assess the taxable property of railroad companies which "property shall be valued at its full cash value." A.R.S. § 42–762. Thus, while there is no constitutional limitation on the assessment of appellant's property on a basis different from other property generally, the legislative prohibition is clearly apparent.

In Sparks v. McCluskey, 84 Ariz. 283, 287, 327 P.2d 295, we applied the principle equally applicable here:

"There is no indication of any dishonest motives on the part of any of these officials. We are satisfied there were none but *if the result of these intentional acts is discrimination the assessments cannot stand irrespective of honest motives.*" (Emphasis supplied) 84 Ariz. 286, 327 P.2d 297.

The Tax Commission in failing to assess appellant's property at full cash value and thereafter to equalize the assessment with other property has not acted within the authority conferred upon it by law. Taxing officials may not under the pretense of enforcing a taxing act impose taxes not authorized thereby. Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163

P.2d 656, 163 A.L.R. 261. We, therefore, hold that appellant in alleging systematic and discriminatory practices by appellee taxing officials states a claim which entitles it to some relief.

◼ In considering what relief is appropriate appellant is met with the contention that its claim for injunctive relief can not be granted because it requests the lower court to require the county assessors to increase the assessment on other taxable property in their counties without giving notice to the owners thereof or joining them as parties to this action. We are unable to accept this contention. The Rules of Civil Procedure, 16 A.R.S., require only that persons having a joint interest shall be made parties, Rule 19(a). In speaking of this rule we have said the test is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court without injuriously affecting the rights of others not brought into the action. Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295.

The absent persons here are the other taxpayers in the state and the counties affected. There rights can not be injuriously affected by a decree of court in this litigation since they have no right other than that the tax laws be administered as written, fairly and without discrimination. Were the ultimate judgment to go against appel-

lees, taxpayers would have no right injuriously affected thereby for they have no right to perpetuate discriminatory acts by public officials even though in a measure they profit therefrom.

◼ In view of our discussion concerning Rule 19 and the plenary power lodged in the State Board of Equalization to equalize all property assessments throughout the state, it is sufficient to say that the county boards of supervisors acting in their capacity as County Boards of Equalization need not be joined in this action.

◼ Appellees urge that by the express language of A.R.S. § 42–204, subd. B state and county officials may not be enjoined in this tax litigation. That section provides:

"No injunction shall issue in any action or proceeding in any court against the state or against any county, municipality or officer thereof, to prevent or enjoin the collection of any tax imposed or levied."

Appellant, however, does not seek to prohibit or enjoin the collection of a tax. It seeks to enjoin the Commission and the County Assessors in the future from assessing appellant's properties in an amount in excess of the percentage of the full cash value at which other properties are assessed or in the alternative to compel in the future the assessment of all properties at full cash value. Appellant is seeking to compel the

taxing officials to comply with the statutes but if unable to strictly comply therewith to cease using the power of public office as the means to discriminate against it. This was adequately discussed in Crane Co. v. Arizona State Tax Commission, supra, 63 Ariz. 426, 445, 163 P.2d 656, 664, where we said:

> "Here the injunction is sought not to prevent the execution of the statute but to prohibit wrongful action on the part of the defendants under the guise of its enforcement or execution. Notwithstanding the statute, we believe it to be the law that if public officers exceed their authority and resulting injury cannot be adequately provided by proceedings at law, equity will enjoin the commission of such illegal act."

While we conclude that appellant's claim for injunctive relief states sufficient facts which if established would authorize a court to grant relief of some kind, we do not at this point in the litigation pass upon what form the relief may take when all the facts have been developed. If appellant establishes that its property is being assessed at a higher percentage of full cash value than other properties, then under the existing statutes discrimination within the 14th Amendment to the United States Constitution will have been shown. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979; McCluskey v. Sparks, supra, 80 Ariz. 15, 291 P.2d 791.

In the analogous situation in Sioux City Bridge (the complaining taxpayer was there assessed at 100 per cent of its true value, while others were assessed at a much lower rate), the Supreme Court of the United States resolved the dilemma with this statement:

> "This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

Hence, unless or until the legislature exercises its authority and establishes classifications of property which permit an assessment at a different percentage of full cash value, courts have no alternative other than to prohibit officials from assessing appellant's properties at a different percentage of full cash value from other properties.

We now address ourselves to the most difficult aspect of the litigation. Appellant seeks to recover from the state and appellee counties 77 per cent of the first half of its taxes paid in 1959. Our conclusion that

appellant may not recover compels us to detail somewhat extensively those matters persuading us to that view.

There is a suggestion from appellees' brief that the State Tax Commission has the power to classify appellant's properties so that it bears a greater share of the tax burden than other properties generally throughout the state. Appellees quote to us from the language of the Supreme Court of the United States:

> "That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate—these are among the common-places of taxation and of constitutional law. [citations]" Nashville C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254.

While the legislature of this state in the case of railroads has not taxed its property at a higher rate than others the State Tax Commission has been expressly authorized to classify property for the purposes of taxation. "The commission shall have full power to classify all property * * *." A.R.S. § 42–122. But we do not

think that the Commission under this statute may carve out a special classification which repeals specific enactments contrary to the express uniform scheme of the legislature.

Under the Constitution the legislative authority of the state can only be exercised by the legislature, Art. 4, Pt. 1, Sec. 1, Constitution of Arizona, and this power can neither be relinquished nor delegated, Loftus v. Russell, 69 Ariz. 245, 212 P.2d 91; Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854. Although the light of a legitimate grant of power for administrative action is often quite dim, it may safely be said that a statute which gives unlimited regulatory power to a commission, board or agency with no prescribed restraint offends the Constitution as a delegation of legislative power. State v. Marana Plantations, 75 Ariz. 111, 252 P.2d 87. What the legislature cannot do is to delegate to an administrative body or official not only the power to fix a rate of taxation according to a standard but also the power to prescribe the standard. Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684.

We do not, however, find it necessary to reach the question whether the delegation of power can be sustained constitutionally for in no event can it be construed to give unlimited power to change the uniform method of assessment prescribed by the

legislature, that is, to classify to the extent here necessary to support the Commission's action. The Commission cannot gather to itself more power than constitutional government permits.

Appellant pleads as the basis for the recovery of the excess taxes paid under protest:

"For many years last past the assessors have habitually, intentionally and systematically assessed all property in their respective counties (excluding property assessed by the Commission) for tax purposes at not exceeding, on the average, twenty per cent (20%) of its full cash value. Such practice has been a matter of public notoriety and well known to the Assessors, the Commission and the Board. During such period, and notwithstanding such knowledge, the Commission has habitually, intentionally and systematically assessed property subject to assessment by it at a percentage of full cash value greatly in excess of twenty per cent (20%) and has assessed plaintiff's operating properties in the State of Arizona in excess of seventy-six per cent (76%) of their full cash value. During said period, and notwithstanding the repeated objections and protests of property owners, including plaintiff, the Board has habitually, intentionally and systematically failed and refused to equalize assessments to the end that all property would be assessed at full cash value. * * *"

Neither the "public notoriety" of the practices pleaded nor that they have continued "for many years" can be doubted. In 1903, nine years prior to statehood, an appeal was perfected to this Court asserting gross inequalities in assessments by reason of similar practices of the Territorial Board of Equalization. County of Cochise v. Copper Queen Consolidated Mining Co., 8 Ariz. 221, 229, 71 P. 946. In a speech before the Constitutional Convention on November 19th, 1910, in opposition to a proposed amendment, later rejected, to Art. 9, Sec. 1, Mr. E. E. Ellinwood, a delegate to the Convention, stated:

"The other day I stepped into the office of the assessor of this county, Mr. Frank Luke, and I asked him at what rate he assessed the property of Maricopa County. He said in no instance less than one-fourth, and in no instance more than one-third of its value. Then if you put this in the constitution, you would be fixing it so the railroad is assessed at its full value while other property is assessed at from ⅓ to ¼ of its value." Verbatim Report Arizona Constitutional Convention, 1910, Vol. 2, Saturday morning, Nov. 19th, page 9.

Nearly five years ago in Sparks v. Mc-Cluskey, 84 Ariz. 283, 237 P.2d 295, this Court took judicial notice of the fact that no properties were assessed at full cash value and stressed the testimony of the county assessor in that case in which he testified the properties of the class there under consideration were assessed at approximately 28 per cent of full cash value.

 The rule at the common law was that taxes voluntarily paid could not be recovered, Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587. Overvaluation of property is not a ground of action at law for the excess of taxes paid beyond what should have been upon a just valuation, Stanley v. Supervisors of Albany, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000. Public policy discourages suits for the refund of taxes even where illegally collected. State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S.W.2d 247, and if the taxpayer desires to raise a question as to his taxes he is compelled to scrupulously follow the statutory procedures, Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743, for the refund of taxes paid is by virtue of governmental grace rather than by reason of any legal right which the taxpayer has to such a refund. State v. Airesearch Manufacturing Co., 68 Ariz. 342, 206 P.2d 562.

 We take judicial notice that the taxing subdivisions of the state have long predicated their fiscal affairs upon the practices alleged in appellant's complaint. For example, school districts have been organized and have issued bonds for capital improvements pursuant to the authority granted by the Constitution, Art. 9, Section 8, in anticipation of continued revenues derived from the taxation practices now complained of. The refund which appellant seeks together with other similar claims threatens the financial solvency of many taxing units of the state, particularly those in rural and undeveloped areas.

Appellees urge upon us that where a statute is ambiguous we will not disturb long established administrative interpretation and the acts of public officials predicated thereon, Long v. Dick, 87 Ariz. 24, 347 P.2d 581, 80 A.L.R.2d 949; Maricopa County v. Trustees Ariz. Lodge, 52 Ariz. 329, 80 P.2d 955. We do not find here an ambiguity and cannot countenance the wilful, systematic and intentional violation of the law no matter how long continued. To do otherwise would be to deny the equal protection of the law to appellant. We can, however, make our decisions prospective in application where great hardship will result if caused from long continued failure to exert a legal right.

Appellant pleads, in effect, that during the period of the many years the assessors continued the stated practice, it has repeatedly objected and protested; yet, its pro-

tests can only be considered as at best perfunctory. Appellant has not until now sought the assistance of this Court to compel a discontinuance of what has long been the settled practice. Such non-action so long continued culminates in the present threat to the existence of government itself. The State's grace does not extend to its own destruction. Clearly this was not within the contemplation of the legislature in the enactment of the refunding statute.

 The principle that the decision will be made prospective only is not unknown. Where judicial interpretations of taxing acts have been overruled resulting in hardship, we have not hesitated to direct the decision to the future only. Arizona State Tax Commission v. Ensign, 75 Ariz. 376, 257 P.2d 392; Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684; O'Malley v. Sims, 51 Ariz. 155, 75 P.2d 50, 115 A.L.R. 634. We hold that administrative interpretations are subject to the same rule where neglect results in great economic hardship.

The order of the trial court dismissing plaintiff's first claim for relief is affirmed. It is reversed as to appellant's second claim for relief. If appellant establishes the facts alleged in its second claim, the court below is directed to enter an injunction compelling action in compliance with this decision and from and after the taxable year in which the superior court enters injunctive relief appellant may pursue the statutory remedies for recovery of taxes occasioned by any further misapplication of the law to the assessment of its property.

BERNSTEIN, C. J., UDALL, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.