599 P.2d 179

**Samuel GROSSMAN, as Trustee of Grossman Trust, Park Central Properties, a partnership, Samara Corporation, a New York Corporation, Business Realty of Arizona, Inc., an Arizona Corporation, and Iger and Sheffel Investments, a partnership, Petitioners,**

v.

**WESTMORELAND II INVESTORS, an Illinois limited partnership, Maricopa County, The Maricopa County Assessor, The Maricopa County Board of Supervisors, The Arizona Department of Revenue, The Arizona Board of Property Tax Appeals, The Superior Court of Arizona, In and For the County of Maricopa; and The Honorable Harold D. Martin, Respondents.**

No. 14210.

Supreme Court of Arizona,
In Banc.

June 26, 1979.

Rehearing Denied Sept. 6, 1979.

Snell & Wilmer by Warren E. Platt, Donald D. Colburn, Robert C. Bates, Phoenix, for petitioners.

Charles F. Hyder, Maricopa County Atty., Beer & Kalyna, P. C. by Donald P. Roelke, Paul Beer, Phoenix, for respondents Maricopa County, Maricopa County Assessor, Maricopa County Board of Supervisors, Arizona Department of Revenue and Arizona State Board of Property Tax Appeals.

Tanner, Jarvis & Owens by Wallace O. Tanner, Phoenix, for respondent Westmoreland II Investors.

CAMERON, Chief Justice.

This is a special action brought jointly by the owners of four shopping centers to stay

a court order compelling disclosure by the Maricopa County Assessor of allegedly confidential information given to the assessor for the purposes of determining the value of petitioners' properties. We have jurisdiction pursuant to the Ariz.Const., art. 6, § 5(4).

The facts necessary for a determination of this matter on appeal are as follows. All real property in the State of Arizona is required to be valued at "full cash value" or its "market value." A.R.S. § 42–227. See *Burns v. Herberger*, 17 Ariz.App. 462, 468 P.2d 536 (1972). In determining what is full cash or market value, three methods of assessment are used. First is the cost replacement method, that is, the initial value or cost of the property plus appreciation and less depreciation. Second is the market data method, that is, the value as determined from recent sales of comparable properties in the same market. Because there are not many sales of shopping centers and because of the many differences between shopping center size, age and location, the market value approach is not normally used for this kind of property. Third is the income approach method determined by the property's net earning power based on the capitalization of the net income. See *Burns v. Herberger*, supra. In Maricopa County, the initial valuation of a new shopping center is done by the cost method. The third method, the income approach, is frequently used after a shopping center has been in operation long enough to make this method feasible. The information and data necessary to perform an income analysis is solely with the possession of the owner of the shopping center and this information must be provided by the owner to the assessor before the assessor can perform an income analysis and arrive at a market value based upon the income method. That this method can be advantageous for some shopping centers is indicated by respondents' memorandum which states that one of the petitioners had its valuation reduced from $15.15 per square foot to $7.82 per square foot by use of the income method as opposed to the cost replacement method. In-

formation concerning the gross income as well as the terms of a center's lease and rental agreements with its stores are of value to competitors. The Assessor's Office represents to the owners that this information is presented to the assessor in confidence.

The instant special action resulted from a tax equalization suit brought by Westmoreland II Investors pursuant to A.R.S. § 42–204 against the Maricopa County Assessor. Westmoreland alleged that its property, Hayden Plaza Mesa, was overvalued by the assessor for the years 1975, 1976 and 1977 as compared to thirteen other shopping centers in Maricopa County. Westmoreland contended that there was an intentional, systematic overvaluation of its property when compared to the lower assessments placed on similar property in the same class. See *Sparks v. McClusky*, 84 Ariz. 283, 327 P.2d 295 (1958).

In order to show that the properties were unfairly valued, Westmoreland served a subpoena duces tecum on Mr. Harold Guy of the Maricopa County Assessor's Office directing him to produce all income and expense data submitted to the Assessor's Office by the thirteen named shopping centers. Westmoreland contends that the subpoenaed information is of critical importance to the furtherance of its suit, that valuations involve judgments made by the assessor which are based on these income and expense statements, and that it is these judgments that result in discriminatory assessments. The assessor objected to disclosure on the grounds that the requested information was confidential by statute. Westmoreland then brought a motion to compel the production of documents which was granted. The owners of four shopping centers—Christown, Thomas Mall, Camelview Plaza, and West Plaza Shopping Center—then brought the instant special action in order to keep the information from being made available to Westmoreland. We took jurisdiction because this is a matter of statewide concern and there is no adequate remedy by appeal.

Our statutes provide that the assessor may request from the taxpayer, or its officers, information "bearing upon the listing

or valuation of taxable property," and that failure to provide it is a class 2 misdemeanor. A.R.S. § 42–222. A.R.S. § 42–223 provides that the property owner shall deliver to the assessor a correct listing of his property and that:

> "B. The lists furnished under this section are not to be open to public inspection, provided, that such lists may be used as evidence in any prosecution brought under §§ 42–222 and 42–252."[1] A.R.S. § 42–223.

■ We have no difficulty in finding that the term "lists," as used in A.R.S. § 42–223, encompasses the material requested and used by the assessor in assessing property values under the income approach method.

In a recent case, *Industrial Commission v. Superior Court*, 122 Ariz. 374, 595 P.2d 166 (1979), we held that where the statute indicated that facts obtained under the Arizona Occupational Health and Safety Act could "not be admissible in any court or before any administrative body except pursuant to the provisions of this article," the matters were still discoverable. We stated:

> "In the instant case, the literal language of the statute prohibiting the use in court of investigative facts and information does not of itself prevent discovery of the Occupational Health and Safety Division's reports. Since such statutes are to be strictly construed, the prohibition under consideration does not forbid discovery of relevant facts and information. That the information may not be admissible at a trial does not make it non-discoverable, providing it 'appears reasonably calculated to lead to the discovery of admissible evidence.' Rule 26(b)(1), Rules of Civil Procedure, 16 A.R.S."

We believe the two statutes can be distinguished. Unlike the Arizona Occupational Health and Safety Act which merely prohibited the use of the information in court but did not specifically prevent it from being made public, the statute herein is more restrictive. The statute, A.R.S. § 42–223,

says that the information is "not to be open to public inspection * * *." That segment of the "public" most interested in the information given to the assessor by a shopping center is a competing shopping center. To allow a competitor to have this valuable business information made available to him by merely filing a lawsuit would be contrary to the legislative intent as set forth in the statute.

■ We believe the statute prohibits disclosure of the subpoenaed information. The information was given with the promise that it would be kept confidential. There are no exceptions set forth in A.R.S. § 42–223(B) (except for enforcement of A.R.S. § 42–222) and strict construction requires that no exception be implied.

The order and permanent injunction against the Maricopa County Assessor compelling disclosure of the subpoenaed information is hereby ordered set aside.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.

---

1. A.R.S. § 42–252 provides penalties for falsifying or refusing to provide a list of properties as provided in A.R.S. § 42–222.