SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| AILEEN H. CHAR LIFE INTEREST, ) | Arizona Supreme Court |
| 629 INVESTMENTS, A HAWAII ) | No. CV-03-0348-PR |
| PARTNERSHIP, REMAINDER INTEREST; ) | |
| AIMCO PROPERTIES LP; ) | Court of Appeals |
| AIMCO/BLOSSOMTREE APTS LP; ) | Division One |
| AL-SAID ANNA F T; ALTA PLACE ) | Nos. 1 CA-TX 02-0003 |
| PROPERTY INC.; ARCADIA VILLA ) | 1 CA-TX 02-0013 |
| APTS, LLC; ARIZONA GRANO-PALMS ) | |
| LTD; CAMINO APTS; CINNAMON ) | Maricopa County Superior |
| PROPERTIES; CON AM REALTY ) | Court |
| INVESTORS; COOK INLET REGION OF ) | Nos. TX 98-00413 |
| ARIZONA INC; DELCASTELLO IRENE ) | TX 98-00419 |
| TRUST; EQR VILLA MANANA VISTAS ) | TX 98-00422 |
| INC; EQR-WATSON GP; EQUITY ) | |
| RESIDENTIAL PROPERTIES; ERP ) | |
| OPERATING LP; EVANS WITHYCOMBE ) | |
| FINANCE PSHP SUITE A200; EVANS ) | |
| WITHYCOMBE FINANCE PARTNERSHIP ) | |
| LP; EVANS WITHYCOMBE ) | |
| RESIDENTIAL; EVANS WITHYCOMBE ) | |
| RESIDENTIAL LP; FOREST PARK LLC; ) | |
| G & E HOLDINGS INC; GREENWAY ) | |
| PHOENIX ASSOCIATION LTD ) | |
| PARTNERSHIP; HEATHERWOOD ) | |
| INVESTORS LTD PARTNERSHIP; ) | |
| LAURELS SADDLE CLUB LP; MAGELLAN ) | |
| NORTHWOOD INC; MARIPOSA JOINT ) | **O P I N I O N** |
| VENTURE; MORARU, PETER & ) | |
| ELIZABETH; MOUNTAIN VIEW ) | |
| CASITAS LP; NHP SUMMER LP; ) | |
| ORCHARD MESA ASSOCIATES LTD ) | |
| PARTNERSHIP; OTC APARTMENTS LP; ) | |
| PARKSIDE; PARKSIDE PARTNERSHIP; ) | |
| PASO ROBLES LLC; PHOENIX ) | |
| COURTYARDS LTD PARTNERSHIP; PINE ) | |
| SPRINGS LLC; PROFESSIONAL ) | |
| PROPERTY INV LTD; SCOTTSDALE ) | |
| PALMS LTD PARTNERSHIP; SMITH ) | |
| MELVIN W JR & MARJORIE L TR; ) | |

SUNSET SHADOWS INC; SUNSHINE          )
LAND ASSOCIATES LP; THE PHOENIX       )
APTS LLC; THE S DEVELOPMENT           )
COMPANY; THOMSON THOMAS J; TPOC       )
LTD LIABILITY CO; VERDE               )
INVESTMENT INC; W. L. PROPERTIES      )
LLC; WELLSFORD RESIDENTIAL            )
TRUST; YF PARTNERS GREEN LP           )
                                      )
            Plaintiffs-Appellees,     )
                                      )
                v.                    )
                                      )
MARICOPA COUNTY, a political          )
subdivision of the State of           )
Arizona,                              )
                                      )
            Defendant-Appellant.      )
_____)
                                      )
ANTHEM DUNLAP SQUARE, LLC, a          )
limited liability company,            )
                                      )
              Plaintiff-Appellee,     )
                                      )
                v.                    )
                                      )
MARICOPA COUNTY, a political          )
subdivision of the State of           )
Arizona,                              )
                                      )
            Defendant-Appellant.      )
_____)
                                      )
CENTURY PROPERTIES FUND XIX;          )
FARNAM COMPANIES INC;                 )
FEIGA/CIMMARON LP; PACIFIC            )
CORINTHIAN LIFE INSURANCE;            )
RONALD L. HERRICK TRUSTEE; SANO       )
CORPORATION; WHITE, HOWELL AND        )
HALL, LLC,                            )
                                      )
            Plaintiffs-Appellees,     )
                                      )
                v.                    )
                                      )
MARICOPA COUNTY, a political          )

2

subdivision of the State of )
Arizona, )
  )
           Defendant-Appellant. )
_____)
  )
AILEEN H. CHAR LIFE INTEREST, )
629 INVESTMENTS, A HAWAII )
PARTNERSHIP, REMAINDER INTEREST; )
AIMCO PROPERTIES LP; )
AIMCO/BLOSSOMTREE APTS LP; )
ALSAID ANNA F T; ALTA PLACE )
PROPERTY INC; ARCADIA VILLA )
APTS. LLC; ARIZONA GRANO-PALMS )
LTD; CAMINO APTS; CINNAMON )
PROPERTIES; CON AM REALTY )
INVESTORS; COOK INLET REGION OF )
ARIZONA INC; DELCASTELLO IRENE )
TRUST; EQR-WATSON GP; EQUITY )
RESIDENTIAL PROPERTIES; ERP )
OPERATING LP; EVANS WITHYCOMBE )
FINANCE PSHP SUITE A200; EVANS )
WITHYCOMBE FINANCE PARTNERSHIP )
L.P.; EVANS WITHYCOMBE )
RESIDENTIAL; EVANS WITHYCOMBE )
RESIDENTIAL LP; FOREST PART LLC; )
G & E HOLDINGS INC; GLENWAY )
PHOENIX ASSOC LED PARTNERSHIP; )
LEATHERWOOD INVESTORS LED )
PARTNERSHIP; LAURELS SADDLE CLUB )
LP; MAGELLAN NORTHWOOD, INC; )
MARIPOSA JOINT VENTURE; MORARU, )
PETER & ELIZABETH; MOUNTAIN VIEW )
CASITAS LP; NHP SUMMER, L.P.; )
ORCHARD MESA ASSOCIATED LTD )
PARTNERSHIP; OTC APARTMENTS LP; )
PARKSIDE; PARKSIDE PARTNERSHIP; )
PASO ROBLES LLC; PHOENIX )
COURTYARDS LTD PARTNERSHIP; PINE )
SPRINGS, LLC; PROFESSIONAL )
PROPERTY INV LTD; SCOTTSDALE )
PALMS LTD PARTNERSHIP; SMITH )
MELVIN W JR & MARJORIE L TR; )
SUNSET SHADOWS, INC,; SUNSHINE )
LAND ASSOCIATES LP; THE PHOENIX )
ARTS LLC; THE S DEVELOPMENT )
COMPANY; THOMSON THOMAS J; TPOC )

```
LTD LIABILITY CO; VERDE          )
INVESTMENTS, INC,.; W. L.         )
PROPERTIES, LLC; WELLSFORD        )
RESIDENTIAL TRUST; YF PARTNERS    )
GREEN LP,                         )
                                  )
        Plaintiffs-Appellants,    )
            Cross-Appellees,      )
                                  )
                v.                )
                                  )
MARICOPA COUNTY, a political      )
subdivision of the State of       )
Arizona; and the DEPARTMENT OF    )
REVENUE OF THE STATE OF ARIZONA,  )
                                  )
        Defendants-Appellees,     )
            Cross-Appellants.     )
                                  )
_____ )
```

Appeal from the Arizona Tax Court
Nos. TX 98-00413, TX 98-00419, TX 98-00422
The Honorable Jeffrey S. Cates
**Affirmed in Part; Reversed in Part; Remanded**

_____

Memorandum Decision of Court of Appeals, Division One
1 CA-TX 02-0003, 1 CA-TX 02-0013, Filed September 2, 2003
**Vacated**

_____

Fennemore Craig, P.C.                                  Phoenix
    by   Paul J. Mooney
         Jim L. Wright
    and  Paul Moore
Attorneys for Aileen H. Char, et al.

Helm & Kyle, LTD                                          Tempe
    by   Roberta S. Livesay
    and  Lisa J. Bowey
Special Counsel for Maricopa County

Terry Goddard, Attorney General                        Phoenix
    by   Frank Boucek, III, Assistant Attorney General
Attorneys for Arizona Department of Revenue

_____

McGREGOR, Vice Chief Justice

¶1      We granted review to clarify the elements a taxpayer must prove to establish discriminatory property tax valuation in violation of Arizona's Uniformity Clause.  Ariz. Const. art. IX, § 1.  We exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution, Rule 23 of the Arizona Rules of Civil Appellate Procedure, and Arizona Revised Statutes (A.R.S.) § 12-120.24 (2003).

## I.

¶2      A group of property owners (the Taxpayers) brought this action against Maricopa County and the Arizona Department of Revenue (ADOR) to recover taxes allegedly collected illegally.  The Taxpayers contend that the Maricopa County Assessor valued their apartment properties (Taxpayers' properties) in a discriminatory manner and thus violated the Uniformity Clause of the Arizona Constitution, Article IX, Section 1, and the Equal Protection Clause of the United States Constitution, Amendment XIV, Section 1.  The Taxpayers sought a property tax refund under A.R.S. § 42-204.C (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999).[1]

_____

[1]     At the time in question, A.R.S. § 42-204.C stated:

5

¶3     For tax years 1996 and 1997, as in previous years, the Maricopa County Assessor implemented a computer program (valuation program) to determine the values of commercial properties, including multi-family residential properties, located in Maricopa County.[2]  The valuation program calculated each property's value using a computerized cost model.  The county assessor, however, programmed the valuation program to "roll over" or "freeze" the value of certain parcels.  If a multi-family residential property owner previously had appealed the property's valuation, the valuation program would roll over that property's valuation until one of several actions occurred.[3]

_____

        [W]ithin one year after payment of the first installment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this title. Interest at the legal rate on the overpayment shall be payable from the date of overpayment. For the purpose of computing interest under any such judgment, if the tax was paid in installments, a pro rata share of the total overpayment shall be deemed attributable to each installment.

A.R.S. § 42-204.C (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999).

[2]     We view the record in the light most favorable to upholding the tax court's judgment. *See*, *e.g.*, *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53 ¶ 13, 961 P.2d 449, 451 (1998); *McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980).

[3]     For example, the assessor would revalue the property rather than roll over its valuation if the assessor revalued the property's land, the property owner constructed new improvements

6

The valuation of these roll-over properties did not change from 1996 to 1997. If the valuation program did not roll over the value of a multi-family residential parcel, or if the parcel's value was not manually entered into the County's computer system, the assessor retained the value assigned by the valuation program.

¶4        The Taxpayers own sixty-two multi-family residential parcels in Maricopa County, all among the group of properties that the assessor valued by applying the cost model used as part of the valuation program. The tax court, comparing the valuations for 1996 and 1997, found that the Taxpayers' properties' valuations increased by an average of 37.6 percent, while the roll-over properties' valuations remained unchanged. The tax court then entered judgment in favor of the Taxpayers and ordered the County to refund to the Taxpayers "the difference between the 1996 property valuations and the 1997 increased property valuations of their properties." The County appealed the tax court's decision.

¶5        The court of appeals reversed. In its memorandum decision, the court relied primarily upon its conclusion that the tax court "failed to require evidence of disproportionate

_____

or changed the use of the property, or the assessor manually changed the property's value.

valuation with respect to the properties' full cash value."[4] *Aileen H. Char Life Interest v. Maricopa County*, 1 CA-TX 02-0003 & 1 CA-TX 02-0013 at ¶ 11 (Ariz. App. Sept. 2, 2003) (mem. decision).

¶6      The Taxpayers petitioned this court for review.  We accepted review to clarify the proper standard to apply in determining whether unlawful discrimination has occurred under Arizona's Uniformity Clause.  We will not set aside the tax court's findings unless clearly erroneous.  Ariz. R. Civ. Proc. 52(a).  Whether the tax court applied the proper legal standard, however, presents a question of law reviewed de novo.  *Transp. Ins. Co. v. Bruining*, 186 Ariz. 224, 226, 921 P.2d 24, 26 (1996).

## II.

¶7      The Arizona Constitution requires that "all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax."  Ariz.

---

[4]    The court of appeals also held that the tax court erred in allowing the Taxpayers to voluntarily dismiss Parcel 158-02-005. The court concluded that the dismissal of Parcel 158-02-005 did not comply with Arizona Rule of Civil Procedure 41(a)(1) because "the dismissal was entered in the absence of a stipulation signed by the County and the ADOR, and occurred after the court had issued findings of fact and conclusions of law." *Aileen H. Char Life Interest*, 1 CA-TX 02-0003 & 1 CA-TX 02-0013, mem. dec. at ¶ 33; *see also* Ariz. R. Civ. P. 41(a)(1) ("[A]n action may be dismissed . . . by order of the court pursuant to a stipulation of dismissal signed by all parties who have appeared in the

8

Const. art. IX, § 1. Arizona's Uniformity Clause provides greater protection for taxpayers than does the Equal Protection Clause of the Fourteenth Amendment and is designed "to ensure 'that each taxpayer's property bear the just proportion of the property tax burden.'" *Am. West Airlines, Inc. v. Ariz. Dep't of Revenue*, 179 Ariz. 528, 530-31, 880 P.2d 1074, 1076-77 (1994) (quoting *Merris v. Ada County*, 593 P.2d 394, 398 (Idaho 1979)).

¶8      Four general elements comprise the formula by which Arizona measures a property tax: classification, valuation, assessment ratio, and tax rate. *See*, *e.g.*, *Berge Ford, Inc. v. Maricopa County*, 172 Ariz. 483, 485, 838 P.2d 822, 824 (Tax Ct. 1992). The first step, classification, involves the exercise of legislative power. Exercising this power, the Arizona legislature has established statutory classes of property. *See* A.R.S. §§ 42-12001 to -12010 (Supp. 2003). For most property in Arizona, a county assessor carries out the second step, valuation. An assessment ratio, dictated by the legislative classification, is then applied to the valuation. *See* A.R.S. §§ 42-15001 to -15010 (Supp. 2003). This result represents the property's assessed value. Finally, the applicable tax rate is applied to the property's assessed value to produce the amount of taxes due.

_____

action."). We agree and adopt this holding of the court of appeals.

¶9      In this case, the Taxpayers' challenge involves the second step in the property tax formula, the county assessor's valuation of their properties.  The Taxpayers do not argue that the assessor valued their properties in excess of full cash value, placed them in the wrong legislative classification, or applied a discriminatory tax rate or assessment ratio.  Instead, the Taxpayers argue that the alleged undervaluation of similarly situated properties resulted in the Taxpayers being forced to bear a disproportionate share of the property tax burden.  We use the term "discriminatory valuation" to describe this type of case.

¶10     We defined the elements a taxpayer must prove to make out a case of discriminatory valuation in *McCluskey v. Sparks*, 80 Ariz. 15, 19, 291 P.2d 791, 793 (1955).  In *McCluskey*, without determining whether the particular facts presented amounted to discrimination in violation of the Uniformity Clause, we concluded that the "[d]eliberate and systematic undervaluation of [a taxpayer's] property at a figure greatly in excess of the undervaluation of other like properties amounts to a violation of the Arizona [C]onstitution."  *Id.*  To prove discriminatory valuation, then, a taxpayer must establish (1) that the taxing officials engaged in deliberate and systematic conduct and (2) that such conduct resulted in "great inequality," a finding that requires the court to define the

10

appropriate class of property for evaluating the claim of discriminatory valuation and then to find greatly disproportionate tax treatment within the defined class.

¶11     The County asserts that the Taxpayers must prove each element of their prima facie case beyond a reasonable doubt. The authority upon which the County relies for that proposition, however, refers to challenges to the constitutionality of a statute. *See*, *e.g.*, *Magellan S. Mountain Ltd. v. Maricopa County*, 192 Ariz. 499, 968 P.2d 103 (App. 1998) (holding that statute, which allowed revaluation of real property after January 1 of the valuation year, did not violate the federal Equal Protection Clause or the Uniformity Clause); *Tucson Elec. Power Co. v. Apache County*, 185 Ariz. 5, 912 P.2d 9 (App. 1995) (holding that provision of tax statute taxing mining and utility properties at a higher rate than other properties to be an unconstitutional special law).  This matter involves not a challenge to the constitutionality of a statute, but a claim that the County imposed a discriminatory tax on the Taxpayers. We perceive no reason to depart from the usual rule that a plaintiff must establish each element of a civil action by a preponderance of the evidence, and we hold that standard applies.

11

**A.**

¶12      In a discriminatory valuation case, "there must be something more than a dispute between the taxpayers and the taxing officials as to the valuation placed upon their properties." *McCluskey*, 80 Ariz. at 19, 291 P.2d at 794. "Before the court will interfere, it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct and not mere error in judgment." *Id.* at 20, 291 P.2d at 794. Moreover, "[t]he mere fact that the assessing officials believed their conduct was valid does not render it less vulnerable to attack as discriminatory." *Id.* Finally, deliberate and systematic conduct need not be malicious, only purposeful.

¶13      The County does not seriously dispute that the challenged valuations resulted from systematic and intentional conduct. At the time in question, Arizona statutes limited the circumstances under which an assessor could "roll over" a property valuation:

> In the year subsequent to an appeal, the valuation or classification of property shall be the valuation or classification that was determined in the prior year at the highest level of appeal unless the assessor reviews the current facts which apply to a revaluation or a change in the classification and determines that an adjustment in the valuation or a change in the classification is appropriate.

12

A.R.S. § 42-247.A (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. § 42-16002.B (Supp. 2003). Despite the language of A.R.S. § 42-247.A, the County developed and implemented a policy to "roll over" property values on certain apartment parcels for more than one year. To do so, the assessor programmed the County's computer system to roll over the value of certain properties, while using the cost model to determine the valuation of other properties. The evidence at trial indicated that this program resulted in the County rolling over the values of approximately fifty percent of the apartment parcels but valuing more than forty percent of the apartment parcels, including the Taxpayers' properties, using the cost model. The Taxpayers, therefore, met their burden of establishing that the County intentionally and systematically used a method of valuing their property different from that the County used to value the roll-over properties.

¶14    As we made clear in *McCluskey*, however, "different modes of assessment on the same class of property will not render the same invalid unless in fact they operate to produce discriminatory inequality." 80 Ariz. at 20, 291 P.2d at 794; *see also Sec. Props. v. Ariz. Dep't of Prop. Valuation*, 112 Ariz. 54, 56, 537 P.2d 924, 926 (1975) ("Neither the change in value of a particular parcel of property nor the total changes in assessments considered in the aggregate raise any question as

13

to the legality of the assessment. There must be more."). We therefore turn to the issue of whether the County's program resulted in great inequality. To make this determination, we must first determine the appropriate class for evaluating the Taxpayers' claim of discriminatory valuation.

**B.**

¶15     Arizona's Uniformity Clause requires that taxes be uniform upon the same class of property. Ariz. Const. art. IX, § 1. We examined the meaning of the word "class," for Uniformity Clause purposes, in *Apache County v. Atchison, Topeka and Santa Fe Railway Co.*, 106 Ariz. 356, 476 P.2d 657 (1970). In that case, we stated:

> A class may be the grouping together of persons or things for a common purpose or it may be a ranking of persons or things possessing the same attributes. . . . The word "class," however, in Article IX, § 1 is obviously used in the latter sense, meaning the grouping of persons or things possessing common attributes.

*Id.* at 359, 476 P.2d at 660 (citations omitted). As *Apache County* and our subsequent decisions make clear, the proper class of property to use in evaluating claims of discriminatory valuation consists of those similarly situated properties possessing common attributes "based on the nature of the property or on some other real difference in its use, utility, or productivity." *Am. West Airlines, Inc.*, 179 Ariz. at 535, 880 P.2d at 1081.

14

¶16     In this case, the tax court found that the "multi-family residential property classification is a valid classification to which an unlawful tax discrimination analysis can be applied."  Relying on *Hillock v. Bade*, 22 Ariz. App. 46, 523 P.2d 97 (1974), *aff'd*, 111 Ariz. 585, 535 P.2d 1302 (1975), the County argues that the tax court erred by not defining the relevant class as all property in Maricopa County.[5]  We disagree.  In *Hillock*, a taxpayer challenged Pima County's three-year cyclical revaluation plan mandated by a statewide revaluation program.  22 Ariz. App. at 49, 523 P.2d at 100.  In holding that "the Pima County cyclical revaluation plan did not involve intentional and arbitrary discrimination," the court explained that a number of factors were relevant to this determination,

---

[5]     The County also argues that the inclusion of some "horizontal regimes" and "associated parcels" destroys the homogeneity of the "multi-family residential" classification. According to the tax court's findings, "horizontal regimes" are individual apartment units with separate parcel numbers. "Associated parcels," on the other hand, contain a portion of an apartment complex, but have separate parcel numbers from the rest of the complex.  Although the County presented evidence that the existence of these properties rendered the Taxpayers' proffered class improper, the tax court, after considering the County's arguments, found that "the County failed to show how the inclusion and exclusion of these properties has any significant effect on the necessary discrimination analysis." We find no error in the tax court's finding.  In addition, contrary to the County's assertions, the tax court's finding does not indicate that the tax court improperly shifted the burden of proof to the County.  Instead, the record is clear that the tax court placed the burden of proof on the Taxpayers to make out a prima facie case of discriminatory valuation.

15

including any discrimination that would result if the cyclical plan were not instituted immediately. Specifically, the court examined and rejected the taxpayer's proposed alternative that "the taxing authorities should have waited until the completion of the three year revaluation program so that *all* new valuations could be placed on the assessment rolls at the same time." *Id.* at 53-54, 523 P.2d at 104-05. The court reasoned:

> [The taxpayer's] discrimination claim must be viewed in a context involving *all* property situated in the State of Arizona subject to *ad valorem* property taxation. . . . Therefore to the extent that any particular type of property is undervalued, there is discrimination against all other property within the state, not just against property of that particular class within the particular county involved. When these circumstances are considered, we do not believe that the taxing authorities acted arbitrarily in adopting a cyclical three year plan requiring that the new valuations be placed on the assessment rolls yearly as developed, rather than waiting until all of the new valuations could be placed upon the rolls at the same time at the completion of the three year program.

*Id.* at 54, 523 P.2d at 105.

¶17    The language of *Hillock*, taken out of context, can be read as supporting the broad proposition the County advances. *Hillock*, however, did not mandate the use of geographic criteria to define a peer group of properties to prove discriminatory valuation. Instead, *Hillock* recognized the distinction between systematic reappraisal and intentional discrimination.[6] Indeed,

---

[6]    At the time the Taxpayers brought suit, A.R.S. § 42-221.B stated:

16

if the tax court in this case had found the appropriate class to be all properties in Maricopa County, we doubt that class would have possessed common attributes "based on the nature of the property or on some other real difference in its use, utility, or productivity." *Am. West Airlines, Inc.*, 179 Ariz. at 535, 880 P.2d at 1081; *Apache County*, 106 Ariz. at 359, 476 P.2d at 660.

**¶18**     As the County points out, the legislature has not exercised its power to create statutory classes of property to create a separate classification for "multi-family residential" property.  The "multi-family residential" classification adopted

_____

> In the case of property that is classified as class four, five or six pursuant to § 42-162, the assessor may use the same valuation for up to three consecutive tax years if the assessor files a specific plan for such valuations with the department and the plan is implemented uniformly throughout the county.

A.R.S. § 42-221.B (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. § 42-13052 (Supp. 2003).   Class six property, at the time, encompassed real and personal property "devoted to use as leased or rented property solely for residential purposes."   A.R.S. § 42-162.A.6(a) (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. § 42-12004.A.1 (Supp. 2003) (classifying real and personal property "used solely as leased or rented property for residential purposes" as class four property).   Had the County followed the dictates of A.R.S. § 42-221.B in this case, *Hillock* very well may have supported reaching a different result.   Arguably, if the County had filed a three-year valuation plan with the ADOR and implemented the plan uniformly throughout the county, its conduct would not have caused intentional and systematic discrimination.   Because the record contains no evidence that

17

by the tax court, however, comes directly from the coding system the County uses to identify property within the county for assessment purposes.

¶19       Arizona's statutes give the ADOR general oversight responsibilities for Arizona's property tax system.  A.R.S. § 42-141 (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. §§ 42-11051 to -11056 (1999); A.R.S. § 42-13002 (1999).  At the time in question, the relevant statute directed that the county assessor "determine through the use of the manuals furnished and procedures described by the department the full cash value of all such property, as of January 1 of the next year."  A.R.S. § 42-221.B (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. § 11-542 (Supp. 2003) (requiring the county assessor to determine "all the taxable property in said county at its full cash value"); A.R.S. § 42-13051.B.2 (1999).  To carry out this directive, the County uses the ADOR's *Property Use Code Manual* (the Manual), which contains those codes that the ADOR authorizes for use in the Arizona property tax system.  The ADOR intends that county assessors and others use the Manual for the purpose of

_____

the County filed such a plan in this case, we do not resolve this issue.

18

identifying property according to use. Arizona Department of Revenue, *Property Use Code Manual* at Foreword (1994).

¶20    According to the Manual, "*[t]he purpose of property use codes is to group and code like properties* for identification." *Id.* at 1 (emphasis added). Consistent with this purpose, the Manual sets out property use codes beginning with the prefix "03" to identify properties with multi-family residential property characteristics. The tax court found that the Taxpayers' properties fit within this group and, in fact, had been so coded by the assessor. Because the identification of property as "multi-family residential" accurately reflects the property's use, we agree with the tax court that this class is appropriate for evaluating the Taxpayers' claim of discriminatory valuation. We therefore turn to the tax court's determination that the Taxpayers' properties were subject to a disproportionate valuation when compared to other properties within the same class.

### C.

¶21    To determine the proper standard for deciding whether the government's actions have produced a greatly disproportionate valuation, we turn again to the language of the Uniformity Clause, which requires that "all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." Ariz. Const. art. IX,

§ 1. As this language makes clear, it is the tax paid, not the numerical values assigned to property, that must be uniform. Accordingly, to prevail in a valuation discrimination case, a plaintiff must show tax treatment greatly unequal[7] to that afforded others in the same class and must do so by reference to full cash value. *See*, *e.g.*, *S. Pac. Co. v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963); *McCluskey*, 80 Ariz. at 19, 291 P.2d at 793. In *McCluskey*, we summarized the plaintiffs' argument as follows:

> Plaintiffs' lawsuit in this case is based upon the alleged proposition that plaintiffs have been discriminated against by valuing other properties at below full cash value and, by the use of a method different from that used in valuing other properties, assessing or attempting to assess plaintiffs' properties at a greatly disproportionate valuation.

80 Ariz. at 19, 291 P.2d at 793. We then concluded that "[a]ssessing officials cannot systematically and intentionally use different rules for measuring the value of property of the same class if by the use thereof great inequality results." *Id.* at 20, 291 P.2d at 794.

¶22 Similarly, in *Southern Pacific*, the challenging taxpayer alleged that "its property was assessed at not less

---

[7] The requirement that a taxpayer show greatly unequal treatment reflects the fact that the "valuation of real property, whether done for taxation or investment purposes, is not subject to mathematical certainty" and that the assessment of taxes, therefore, need not be exactly equal. *Bus. Realty of*

than 89 per cent of full cash value but that other property subject to assessment by the respective county assessors was assessed at no more than 20 per cent of full cash value on the average." 92 Ariz. at 398, 377 P.2d at 772. We concluded that "[i]f [a taxpayer] establishes that its property is being assessed at a higher percentage of full cash value than other properties, then . . . discrimination . . . will have been shown." *Id.* at 403, 377 P.2d at 776.

¶23 Although neither *McCluskey* nor *Southern Pacific* holds that a taxpayer can show disproportionate valuation only by reference to full cash value, the structure of Arizona's tax system requires that taxpayers in a discriminatory valuation case demonstrate disproportional valuation using full cash value.

¶24 For tax purposes, Arizona values all real property at full cash value. A.R.S. § 42-221.B (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999); *see also* A.R.S. § 42-13051.B (1999). Under Arizona statutes, "full cash value," for property tax purposes, means "that value determined as prescribed by statute. If no statutory method is prescribed, full cash value is synonymous with market value which means that estimate of value that is derived annually by

---

*Ariz., Inc. v. Maricopa County*, 181 Ariz. 551, 557, 892 P.2d 1340, 1346 (1995).

the use of standard appraisal methods and techniques." A.R.S. §

42-201.4 (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch.

150, § 9 (repeal effective 1999); *see also* A.R.S. § 42-11001.5

(Supp. 2003).

¶25     To establish a greatly disproportionate valuation, a

taxpayer must present evidence from which the court can compare

the valuation of the disfavored properties as a percentage of

their full cash value and the valuation of other similarly

situated properties within the same class as a percentage of

their full cash value.  The taxpayer bears the burden of

demonstrating the difference between a property's valuation and

what the property's value *should have been*.[8]  Once the taxpayer

presents such evidence, the court can determine whether the

taxpayer's property was valued "greatly in excess of the

undervaluation of other like properties." *McCluskey*, 80 Ariz.

at 19, 291 P.2d at 793.

¶26     In this case, the tax court found that "the improper

roll over of valuation for properties similarly situated to [the

Taxpayers'] properties resulted in a disproportional valuation

of [the Taxpayers'] properties."  Although the tax court did not

specify the legal standard upon which it based this finding,

---

[8]     "Valuation" refers to the final value placed upon a piece
of property by the taxing authority.  "Full cash value" refers
to the amount required by statute or, otherwise stated, the
amount a valuation *should have been*.

evidence of record, measured against the standard defined above, supports the trial court's finding.[9]  The assessor valued the Taxpayers' properties by using the cost approach.[10]  As our statutes instruct, we presume that the County's determination of the value of a taxpayer's property is correct.  *See* A.R.S. § 42-16212.C (Supp. 2003).  Applying that presumption, the assessed values for the Taxpayers' properties, taken from the County's data, show both what the valuation of the Taxpayers' properties should have been and the valuation, in fact, given those properties.  Because, as to the Taxpayers' properties, the measures are the same, the Taxpayers' properties were valued at one hundred percent of their full cash value.

**¶27**      As noted above, the County used a different method to value the roll-over properties and left the 1996 valuation of these properties unchanged.  To establish their claim of disproportionate valuation, the Taxpayers needed to present

---

[9]      We will uphold a trial court's factual findings if they are supported by competent evidence.  *See*, *e.g.*, *Federoff v. Pioneer Title & Trust Co. of Ariz.*, 166 Ariz. 383, 388, 803 P.2d 104, 109 (1990).

[10]      The assessor used the cost approach method to determine "full cash value" in compliance with A.R.S. § 42-11001.5, which states, in part, that "[i]f no statutory method [for determining full cash value] is prescribed, full cash value is synonymous with market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques."  The County apparently regarded the cost method as being a standard appraisal technique and thus in compliance with

23

evidence to support their claim that the roll-over valuations differed from the full cash value of those properties. The Taxpayers made this showing by introducing as evidence the values derived by applying the cost model to calculate the full cash value of the improvements to the roll-over properties. The Taxpayers then combined this recalculated improvement value with the full cash value of the roll-over properties' land, again as determined by the County's own figures. Taken together, this evidence shows that the roll-over properties were valued at sixty-six percent of their full cash value while the Taxpayers' properties were valued at one hundred percent of full cash value. Through this evidence, the Taxpayers established the elements of their claim of greatly disproportionate valuation.

¶28 The County, of course, was free to disprove any of the Taxpayers' contentions when it presented its defense. Rather than do so, the County incorrectly insisted that the Taxpayers, as part of their case in chief, bore the burden of disproving all potential explanations for the disparity in valuation between the two groups of properties.

¶29 The County's primary argument involves the Taxpayers' failure to show the value of the land portion of the roll-over properties. As the County points out, the land values for the

---

the statutory requirement, and the Taxpayers do not dispute the use of the cost method to determine full cash value.

24

Taxpayers' properties decreased approximately twenty-five percent from 1996 to 1997, while the land values for the roll-over properties apparently remained unchanged. The County argues that because the Taxpayers failed to present evidence indicating what the land values of the roll-over properties would have been had they also been revalued, the tax court could not determine the extent to which the roll-over properties' land values were overvalued. Because the Taxpayers did not accurately evaluate both the land and the improvements of the roll-over properties, the County asserts, the Taxpayers' proof violates the unitary theory of valuation. *Transamerica Dev. Co. v. County of Maricopa*, 107 Ariz. 396, 399, 489 P.2d 33, 36 (1971) ("[P]roperty valuation must be considered one subject, not to be broken into separate components of land and improvements. . . . In other words, if the total valuation represents the full cash value of the property, it is immaterial for purposes of appeal that one part is overvalued and the other is undervalued.").

¶30     The County could have presented evidence, if such were available,[11] to rebut the Taxpayers' evidence showing

---

[11]     Our own review of the evidence of record suggests that, even if the land values for the roll-over properties were reduced by twenty-five percent, the greatly disproportionate valuation found by the trial court remains. In fact, because land values account for less than twenty percent of the value of

25

disproportionate valuation.  But the responsibility for doing so rested with the County as its defense to the showing made by the Taxpayers.  The tax court, having heard and weighed the evidence presented by the Taxpayers and the County, accepted the Taxpayers' proffered evidence of disproportionate valuation. The evidence of record provides a sufficient basis to support the tax court's finding that the Taxpayers were the subject of a disproportionate valuation in violation of the Uniformity Clause.

### III.

¶31     The County also challenged the tax court's choice of remedy.  The tax court ordered that "the County refund [the Taxpayers] the difference between the 1996 property valuations and the 1997 increased property valuations of their properties." In so ordering, the tax court relied on *Gosnell Development Corp. v. Arizona Department of Revenue*, 154 Ariz. 539, 744 P.2d 451 (App. 1987), in which the court stated:

> There can be no question that under applicable case law, Gosnell has been the victim of unconstitutional discrimination.  That unequal treatment must be remedied.  In the numerous cases in which a taxpayer was adjudged to have been deprived of equal protection under the law as a result of unequal tax treatment, the taxpayer's remedy is that which places him on a par with the favored taxpayers. . . .  "If a ruling is or should be prospective only, the past tax can no longer be said to be validly imposed even though, by itself,

_____

both groups of properties, a greatly disproportionate valuation would likely remain even if the land values are reduced to zero.

26

> it falls squarely under the coverage of some tax-imposing [law]. . . . *Conversely, to the extent the amount of the tax has already been collected, it becomes an 'overpayment' which is subject to refund . . . ."*

*Id.* at 542, 744 P.2d at 454 (quoting *Int'l Bus. Mach. Corp. v. United States*, 343 F.2d 914, 920 (Ct. Cl. 1966) (emphasis added)); *see also* A.R.S. § 42-11005.B (1999) ("If the court determines that the tax due is less than the amount paid, the excess shall be refunded . . . .").

¶32     The court of appeals again reached that conclusion in *Scottsdale Princess Partnership v. Department of Revenue*, 191 Ariz. 499, 958 P.2d 15 (App. 1997).  The Scottsdale Princess Partnership sought a refund of property taxes paid under protest for the 1993 and 1994 tax years.  The Partnership argued that Arizona's possessory interest taxing scheme violated the Uniformity Clause because it impermissibly created a taxing classification based on the time period at which the property interest was created[12] instead of the "nature, use, utility, or productivity of the taxed property."  *Id.* at 502, 958 P.2d at 18.  After agreeing that the time-based classification violated Arizona's Uniformity Clause, the court, relying on *McKesson*

---

[12]     The taxing scheme taxed property interests differently, depending on whether the property interest was created before or after April 1, 1985. *Scottsdale Princess*, 191 Ariz. at 502, 958 P.2d at 18.

*Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), and *Gosnell*, concluded:

> The appropriate remedy for such discrimination is a refund in the amount necessary to make [the non-favored taxpayer's] tax burden uniform with that of the unconstitutionally favored taxpayers; that is, a refund of the difference between the amount of taxes . . . actually paid and the amount it would have paid had it qualified for the special treatment . . . .

*Scottsdale Princess*, 191 Ariz. at 505, 958 P.2d at 21.

¶33     We apply the approach taken in *Gosnell* and *Scottsdale Princess* for a number of reasons. Most importantly, Arizona law requires a taxpayer to pay any taxes due before challenging the validity or amount of the tax. *See* A.R.S. § 42-11004 (1999).[13] In *McKesson*, the United States Supreme Court, addressing the appropriate remedy for a Florida liquor tax scheme that unconstitutionally discriminated against interstate commerce in

---

[13]     A.R.S. § 42-11004 states:

> A person on whom a tax has been imposed or levied under any law relating to taxation may not test the validity or amount of tax, either as plaintiff or defendant, if any of the taxes:
>     1. Levied and assessed in previous years against the person's property have not been paid.
>     2. That are the subject of the action are not paid before becoming delinquent.
>     3. Coming due on the property during the pendency of the action are not paid before becoming delinquent.

A.R.S. § 42-11004; *see also* A.R.S. § 42-204.A (Supp. 1997), *repealed by* 1997 Ariz. Sess. Laws, Ch. 150, § 9 (repeal effective 1999).

28

violation of the Commerce Clause,[14] concluded that if a state "relegates [a taxpayer] to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." 496 U.S. at 31 (footnote omitted). Although *McKesson* involved a challenge brought under the federal Commerce Clause, denying any refund to the Taxpayers could raise constitutional due process issues. In addition to raising due process concerns, denying the Taxpayers a refund provides limited incentive for taxing authorities to adhere to the Arizona constitutional mandate that all taxes "be uniform upon the same class of property within the territorial limits of the authority levying the tax." Ariz. Const. art. IX, § 1. The relatively minor costs associated with defending against a taxpayer's suit to recover illegally collected taxes provide only limited incentive for taxing authorities to refrain from imposing taxes questionable under the Uniformity Clause. Finally, the County presented no proof that ordering a refund to the Taxpayers will do great harm to the public coffers. *See S. Pac. Co.*, 92 Ariz. at 406, 377 P.2d at 778.

¶**34** For the foregoing reasons, to place the Taxpayers' properties on par with the favored roll-over properties, we

---

[14] U.S. Const. art. I, § 8, cl. 3.

29

conclude that the appropriate remedy is that which the tax court ordered: The County must refund the difference between the amount the Taxpayers paid as property taxes in 1997 and the amount they would have paid had they been treated in the same manner as the roll-over properties. We remand to the tax court to determine the appropriate refund for each property.

## IV.

¶35    The court of appeals reversed the tax court's judgment because it concluded that the tax court failed to require evidence of disproportionate valuation with respect to the properties' full cash value. Consequently, the court of appeals did not reach a number of other issues raised on appeal, including whether the County's actions were intentional and systematic, whether a new trial was necessary on the issue of alleged new evidence, whether the tax court properly awarded attorney fees and expert witness fees, and whether the tax court improperly defined the appropriate class or ordered an inappropriate remedy.

¶36    We have concluded that the tax court properly defined the appropriate class, acted within its discretion in finding discrimination and that the County's actions were intentional and systematic, and ordered a proper remedy. We can resolve the remaining issues on the record before us. Therefore, we consider whether the tax court abused its discretion in denying

30

the County's motion for new trial and the parties' arguments regarding attorney fees and expert witness fees.

## A.

¶37    The County appealed the tax court's judgment in favor of the Taxpayers.  After identifying "new evidence," however, the County moved to suspend the appeal and revest jurisdiction in the tax court to allow that court to consider a motion for relief from judgment brought pursuant to Arizona Rule of Civil Procedure 60(c).  The court of appeals granted the motion and revested jurisdiction in the tax court.

¶38    The County based its Rule 60(c) motion on its claim that, after trial, it discovered that 4,002 of the roll-over properties "were rolled over as the result of a mistake, not as a matter of intent."  The County maintained that a mistake in encoding these properties resulted in the tax court erroneously finding that the "values for 4,297 properties were rolled over because the properties had been subject to a September increase in value."  The County claimed that its discovery of this mistake warranted Rule 60(c) relief.

¶39    The tax court denied the County's motion, stating first that the County's claimed "new evidence," even if true, would not have changed the court's decision.  The tax court also concluded that the County "did not establish that with due diligence it could not have discovered this evidence in time to

31

move for a new trial." We review a trial court's denial of a motion for relief from judgment under Rule 60(c) for an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328, 697 P.2d 1073, 1078 (1985); *De Gryse v. De Gryse*, 135 Ariz. 335, 336, 661 P.2d 185, 186 (1983).

¶40 Rule 60(c) allows a court to relieve a party from a final judgment for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect," on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d),"[15] or for "any other reason justifying relief from the operation of the judgment." Ariz. R. Civ. P. 60(c)(1), (2), (6). "The standard for determining whether conduct is 'excusable' is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances." *Geyler*, 144 Ariz. at 331, 697 P.2d at 1081.

¶41 The record in this case supports the tax court's ruling. The County possessed the evidence on which it relied in its Rule 60(c) motion throughout the lengthy litigation, although it apparently determined its purported significance only after the court entered judgment. As a result, the tax

---

[15] Rule 59(d) states: "A motion for new trial shall be filed not later than 15 days after entry of the judgment." Ariz. R. Civ. P. 59(d).

court acted within its discretion in denying the County's motion.

**B.**

¶42    Arizona's statutes permit the Taxpayers, as the prevailing parties in an action challenging the assessment or collection of taxes, to recover reasonable attorney fees and other expenses.  A.R.S. § 12-348.B (2003).  Using this statutory authority, a court "may award fees and other expenses to any party . . . which prevails by an adjudication on the merits in an action brought by the party against this state or a city, town or county challenging . . . [t]he assessment or collection of taxes."  A.R.S. § 12-348.B.1.  "Fees and other expenses" "include the reasonable expenses of expert witnesses" along with "reasonable and necessary attorney fees."  A.R.S. § 12-348.I.1.

¶43    Subsection E of the statute, however, provides that such an award for fees "shall not exceed thirty thousand dollars for fees incurred at each level of judicial appeal."  A.R.S. § 12-348.E.5.  The tax court, based on its interpretation of section 12-348, awarded the Taxpayers, as the prevailing party, $30,000.00 as attorney fees.  The Taxpayers appealed their award, arguing that the plain language of A.R.S. § 12-348.B, E.3, and E.5 contemplates multiple awards when there are multiple plaintiffs and that public policy goals support its interpretation of the statute, which would permit each of

33

multiple plaintiffs represented by the same attorney to recover up to $30,000.00 for attorney fees. The County contends that multiple parties represented by the same attorney can receive only one award, capped at $30,000.00, for each level of appeal. To hold otherwise, the County argues, would be to grant plaintiffs a windfall. The proper interpretation of a statute is a question of law that we review de novo. *See Bilke v. State*, 206 Ariz. 462, 464 ¶ 10, 80 P.3d 269, 271 (2003).

¶44    In resolving this question, we look first to the language of the statute, which supports the argument that each party is entitled to an award of attorney fees, up to $30,000.00. *Id*. at ¶ 11 ("The court's chief goal in interpreting a statute is 'to fulfill the intent of the legislature that wrote it.' In determining the legislature's intent, we initially look to the language of the statute itself." (citations omitted)). Subsection B expressly refers to an award of fees to "any party." A.R.S. § 12-348.B. Similarly, subsection E, in describing the limitations imposed upon attorney fees, refers to "awards," apparently contemplating multiple awards. Nothing in the statute indicates that the legislature intended the cap on fees to apply to each "action" brought to challenge the collection of taxes, rather than to each "party." We think that, if the legislature had intended to limit the statute as the County urges, it would have used

34

language making that limitation clear. *Bilke*, 206 Ariz. at 465 ¶ 15, 80 P.3d at 272.

**¶45** Interpreting section 12-348 as applying to each party rather than to a single action also furthers another important interest. We encourage plaintiffs to consolidate their actions, and thereby further judicial economy, when we allow each party to recover fees even if the same attorney represents multiple plaintiffs. Were we to interpret the statute as the County urges, we would encourage each of many plaintiffs to file a separate action with separate representation. The result not only would reduce judicial economy but also, because several attorneys would perform duplicative work, actually could cause additional, unnecessary expense to the County.[16]

**¶46** Contrary to the Taxpayers' approach, however, the statute does not envision setting the maximum recoverable fee by simply multiplying the number of plaintiffs represented by the same attorney by $30,000.00. Instead, the fee recovered by each party must reflect only the effort expended *on behalf of that party*. When the same attorney represents multiple plaintiffs, therefore, recovery is limited to the incremental increase in fees related to the representation of each additional plaintiff,

---

[16]    We note that the statute, by capping an attorney's billable rate at $175.00 per hour, imposes another restriction that guards against a party receiving a windfall as attorney fees. A.R.S. § 12-348.E.3.

35

because only that incremental increase in effort reflects time spent *on behalf of that party*. Thus, if the reasonable attorney fee associated with establishing the claim of the first of multiple plaintiffs is $50,000.00, that party can recover $30,000.00, but the additional portion of the fee does not "roll over" to the second plaintiff represented. Rather, that party must establish the additional reasonable attorney fee associated with the representation of the second party. In many actions, the incremental increase will be relatively small; in others, such as actions in which establishing the damages of each party requires complex calculations, the incremental increase may be relatively large. In all instances, the prevailing party must establish the amount of reasonable attorney fees.

¶47 The clear language of A.R.S. § 12-348 permits each party to receive an award of attorney fees up to $30,000.00 for each level of appeal. Therefore, the tax court erred in construing section 12-348 as permitting only a single award regardless of the number of individual plaintiffs involved in an action, and we reverse the court's judgment limiting the fees award. Consistent with this opinion, the tax court, on remand, must determine the appropriate amount of the attorney fee award

36

due the Taxpayers as prevailing parties under the test set out above.[17]

**¶48**     The final issue we address involves the tax court's finding that $4,000.00 was "a reasonable sum for Mr. Abrams' expert witness expenses."  *See* A.R.S. § 12-348.B (permitting a prevailing party to recover the reasonable expenses of expert witnesses).  The County argues that the tax court erred in finding that Mr. Abrams qualified as an expert and was of assistance to the tax court.[18]  We find no clear error in the tax court's findings.

**¶49**     Mr. Abrams offered testimony explaining the County's tax roll data.  The tax court found that Mr. Abrams' testimony "assisted the trier of fact to understand the evidence and determine facts in issue."  Because the tax court was the trier of fact, that court could determine better than we whether Mr. Abrams was of assistance.  Accordingly, we conclude that the tax court did not abuse its discretion in awarding reasonable expert witness fees.

---

[17]    The Taxpayers also request this court to award them reasonable attorney fees incurred before this court pursuant to A.R.S. § 12-348.B.  We conclude that the Taxpayers, as the prevailing parties, are entitled to an award of reasonable attorney fees incurred in this proceeding.  *See* ARCAP 21.

[18]    Arizona Rule of Evidence 702 allows "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify in order to "assist the trier of fact to

**IV.**

¶**50**     For the foregoing reasons, we vacate the court of appeals' memorandum decision, affirm in part and reverse in part the judgment of the tax court, and remand to the tax court to determine the appropriate amount of refund and attorney fees.

_____
                    Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice

_____
understand the evidence or to determine a fact in issue."  Ariz. R. Evid. 702.