NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DANIEL POPE, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, *Defendant/Appellee*.

---

RACHEL ROBERTS, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, *Defendant/Appellee*.

No. 1 CA-TX 20-0006, 1 CA-TX 21-0004
(Consolidated)
FILED 6-13-2023

---

Appeal from the Arizona Tax Court
No.  TX2018-00759, TX2020-000833
The Honorable Christopher Whitten, Judge
The Honorable Danielle J. Viola, Judge

---

**AFFIRMED**

---

COUNSEL

Shawn Aiken PLLC, Phoenix
By Shawn Aiken
*Co-Counsel for Plaintiffs/Appellants*

Holden Willits PLC, Phoenix
By Robert G. Schaffer
*Co-Counsel for Plaintiffs/Appellants*

Kickham Hanley PC, Royal Oak, MI
By Gregory D. Hanley
*Co-Counsel for Plaintiffs/Appellants*

Osborn Maledon PA, Phoenix
By Eric M. Fraser
*Counsel for Defendant/Appellee City of Phoenix*

––––––––––––––––––––––––

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge D. Steven Williams joined.

––––––––––––––––––––––––

**C A T T A N I**, Chief Judge:

**¶1** Daniel Pope and Rachel Roberts appeal the dismissal of their anti-diversion claims against the City of Phoenix. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** In the mid-2000s, the City built a rental car facility to serve Sky Harbor Airport. To fund the project, the City implemented a customer facility charge ("CFC") of $6 per transaction day for each vehicle rented at the facility. *See* Phoenix City Code § 4-79(A). Funds generated by the CFC are to be used to pay debt service on the bonds used to construct the facility as well as for ongoing costs associated with the facility and transportation to the airport, including an extension of the SkyTrain light-rail system. *See* Phoenix City Code § 4-79(C)(1).

**¶3** Pope rented a car at the facility in 2017 and paid a CFC of $36. Roberts rented a car at the facility in 2019 and paid a $30 CFC. Each brought a putative class action alleging that the CFC violates the Arizona Constitution's anti-diversion provision, which (broadly speaking) requires that funds generated by taxes or fees imposed on road users for their road use be expended only for road purposes. *See* Ariz. Const. art. 9, § 14. The

City moved to dismiss in each case, and the tax court granted both motions on various grounds.

¶4 After the court entered judgment against Pope, Pope timely filed a motion for new trial, which the court denied. Pope then appealed. The court entered judgment against Roberts, and after the court reopened the time to appeal under ARCAP 9(f), Roberts appealed. We consolidated the two appeals.

## DISCUSSION

### I. Appellate Jurisdiction.

¶5 Preliminarily, the City argues that Pope did not timely appeal the tax court's judgment, and that we thus lack appellate jurisdiction over his case. The tax court entered judgment against Pope on March 10, 2020, and Pope timely filed a motion for new trial 14 days later on March 24. After full briefing, the court denied the motion on May 6. Pope filed his notice of appeal 16 days later on May 22.

¶6 Under the Arizona Rules of Civil Appellate Procedure, if a party timely and properly files a post-judgment motion, the 30-day window for filing an appeal does not begin to run until after the court enters a signed written order resolving the last such motion. *See* ARCAP 9(a), (e)(1). A motion for new trial is one such time-extending post-judgment motion. ARCAP 9(e)(1)(D). And because the Arizona Rules of Civil Procedure generally "govern all Arizona Tax Court proceedings," Ariz. Tax Ct. R. of Prac. 2, a motion for new trial may properly be filed in a tax case. *See* Ariz. R. Civ. P. 59; *see also SMP II Ltd. P'ship v. Ariz. Dep't of Revenue*, 188 Ariz. 320, 322 (App. 1996) (noting the tax appeal includes denial of a motion for new trial); *Estate of Bohn v. Scott*, 185 Ariz. 284, 289 (App. 1996); *State ex rel. Ariz. Dep't of Revenue v. Care Constr. Corp.*, 166 Ariz. 294, 296–97 (App. 1990); *cf. Aileen H. Char Life Int. v. Maricopa County*, 208 Ariz. 286, 298–99, ¶¶ 36–41 (2004) (affirming the tax court's ruling on a post-judgment Rule 60 motion for relief from judgment).

¶7 Here, Pope's motion for new trial was timely filed, *see* Ariz. R. Civ. P. 59(b)(1) (15-day deadline to file motion for new trial), and Pope filed his notice of appeal 16 days after the court ruled on the motion, well within the 30-day deadline. The City asserts, however, that ARCAP 9 (including its provision for time-extending motions) does not apply to appeals from tax court judgments. Instead, in the City's view, a tax-court-specific statute restricts the time to appeal to a flat 30 days from entry of judgment by directing that "[t]he judgment is final unless within thirty days after the

entry of the judgment a notice of appeal is filed with the clerk of the tax court."  A.R.S. § 12-170(C).

¶8            As the City notes, ARCAP 9(a) contemplates that the deadline to appeal can permissibly be varied, setting a baseline deadline of 30 days after entry of judgment "unless the law provides a different time."  But § 12-170(C) does not provide a different time.  Enacted when the Legislature established a dedicated tax court, *see* 1988 Ariz. Sess. Laws, ch. 330, § 2 (38th Leg., 2d reg. sess.), § 12-170(C) sets a deadline of 30 days from entry of judgment to appeal—just like ARCAP 9(a).  That is, the final-judgment rule now codified in § 12-2101(A)(1) still provides the substantive right to appeal from a final tax court judgment, *see Devenir Assocs. v. City of Phoenix*, 169 Ariz. 500, 502 (1991) (citing prior codification of A.R.S. § 12-2101(A)(1)), and § 12-170(C) simply "confirms that the procedures for appealing final judgments under A.R.S. § 12-2101[(A)(1)] also apply to judgments entered by the tax court," *Devenir*, 169 Ariz. at 503 (quoting *People of Faith v. Ariz. Dep't of Revenue*, 164 Ariz. 102, 105 (App. 1990)).

¶9            The City relies on the *Devenir* court's observation that § 12-170(C) "emphasizes that a final judgment of the tax court becomes absolute and unreviewable if no notice of appeal is filed within the 30 days following its entry." *Devenir*, 169 Ariz. at 503 (quoting *People of Faith*, 164 Ariz. at 105). But this simply confirms that the procedures for appealing civil judgments apply in tax court; a failure to timely appeal from a civil judgment (which also must be final before appeal is proper) likewise makes that judgment "unreviewable."  *See id.*; *see also, e.g.*, *Edwards v. Young*, 107 Ariz. 283, 284 (1971) ("[W]here the appeal is not timely filed, the appellate court acquires no jurisdiction other than to dismiss the attempted appeal."); *cf.* Ariz. R. Civ. P. 54(a)–(c), 58(b) (entry of final judgment).

¶10          It would be anomalous to permit post-judgment motions asserting errors in the tax court's judgment, *see supra* ¶ 6, but then require that an appeal be filed before the tax court has an opportunity to correct any error (or reaffirm its judgment).  *See generally* Ariz. R. Civ. P. 50(b), 52(b), 59(a)–(b), 59(d), 60(b)–(c) (15-day deadline for post-judgment motions, including Rule 60 motions under ARCAP 9(e)(1)(D)); Ariz. R. Civ. P. 7.1(a)(3) (permitting 10 days for a response and 5 days for a reply to motions).  Pope's case demonstrates the quandary: no appeal would have been necessary (from Pope's perspective) if the tax court had granted his timely motion for new trial, but the court did not rule until more than 30 days after entering judgment, at which point (under the City's interpretation) Pope would not be able to appeal.  Moreover, the City's interpretation of finality under § 12-170(C) would presumably divest the

tax court of authority to rule on a post-judgment motion (not just a party's ability to appeal the ruling) 30 days after judgment.

**¶11**      In sum, § 12-170(C) simply confirms that the procedures for appealing civil judgments apply in tax court. Thus, ARCAP 9(e)(1)(D) extended the time for Pope to appeal, and his appeal was timely filed. We have jurisdiction under A.R.S. § 12-2101(A)(1).[1]

## II.      Anti-Diversion.

**¶12**      The City requires all rental car companies that either lease space at or obtain customers through Sky Harbor's consolidated rental car facility to collect a CFC of "six dollars per transaction day per vehicle" from all airport customers. Phoenix City Code § 4-79(A). Each rental company must hold those funds in trust and must, on a monthly basis, "remit [to the City] all CFC's that were collected or should have been collected from its airport customers." Phoenix City Code § 4-79(B)–(C). Failure to comply with these requirements is a class 1 misdemeanor. Phoenix City Code § 4-80.

**¶13**      Pope and Roberts argue that the CFC is a fee on road users within the ambit of the anti-diversion provision and that the City improperly uses those funds for non-road-related purposes. They contend that the tax court thus erred by dismissing their complaints for failure to state a claim. We review the dismissal de novo, assuming the truth of the complaint's well-pleaded facts. *Coleman v. City of Mesa*, 230 Ariz. 352, 355–56, ¶¶ 7–9 (2012). We will affirm dismissal under Rule 12(b)(6) if the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at 356, ¶ 8 (citation omitted).

---

[1]      The City does not challenge our jurisdiction to consider Roberts's appeal, but we note that her appeal was likewise filed outside the 30-day period specified in A.R.S. § 12-170(C)—as was the City's cross-appeal (later voluntarily dismissed) from that judgment. In Roberts's case, the superior court granted Roberts's request under ARCAP 9(f) to reopen the time to appeal due to lack of notice of entry of the judgment. The City leaves unexplained why § 12-170(C) should be interpreted to prevent time-extension under ARCAP 9(e) for Pope's appeal while permitting reopening the time to appeal under ARCAP 9(f) for Roberts's appeal. In any event, given our conclusion that ARCAP 9's time-extending provisions apply to appeals from tax court judgments, we likewise have jurisdiction over Roberts's appeal on this basis.

**¶14**　　　　The anti-diversion provision of the Arizona Constitution prohibits use of funds generated by taxes or fees "relating to registration, operation, or use of vehicles on the public highways or streets" for anything other than "highway and street purposes":

> No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on the public highways or streets or to fuels or any other energy source used for the propulsion of vehicles on the public highways or streets, shall be expended for other than highway and street purposes . . . .

Ariz. Const. art. 9, § 14.　This provision restricts expenditures, but only if the source of the funds falls within specified categories: as relevant here, fees "relating to . . . operation[] or use of vehicles on the public highways or streets." *Id.*

**¶15**　　　　Pope and Roberts urge us to interpret "relating to" broadly as anything having a "connection with" or "reference to" road use.　But the Arizona Supreme Court has already rejected that type of approach and has instead construed "relating to" in this context to mean a tax or fee "[1] imposed as a prerequisite to, or [2] triggered by, the legal operation or use of a vehicle on a public road." *Saban Rent-a-Car LLC v. Ariz. Dep't of Revenue*, 246 Ariz. 89, 99, ¶ 39 (2019); *see also id.* at 95–99, ¶¶ 22, 26–36.　The CFC is neither.

**¶16**　　　　Here, payment (or non-payment) of the CFC has no bearing on whether a rental vehicle can legally be used or operated on roads.　Car rental companies must register their vehicles (and pay the necessary registration fees) to authorize use of their vehicles on public roadways. *See* A.R.S. §§ 28-2153(A) (prohibiting operation of a motor vehicle without current registration), -2157(E) (requiring payment of fee for vehicle registration); *cf. Saban*, 246 Ariz. at 98, ¶ 33.　And car renters must have a valid driver's license (which requires payment of a related fee) to lawfully operate a rental car on Arizona's roadways. *See* A.R.S. §§ 28-3151(A) (prohibiting driving "without a valid driver license"), -3158(B) (requiring payment of fee for driver license), -3002 (setting fees for driver licenses); *cf. Saban*, 246 Ariz. at 98, ¶ 33.　The CFC, on the other hand, does not affect whether a driver may lawfully operate a rental vehicle or whether a rental vehicle may lawfully be used on the road, and thus it is not "a prerequisite to . . . the legal operation or use of a vehicle on a public road" as necessary to implicate the anti-diversion provision. *See Saban*, 246 Ariz. at 99, ¶ 39.

**¶17**         Pope and Roberts contend otherwise, highlighting that no car rental company at the facility will waive the CFC or rent to an airport customer who refuses to pay.  At most, that fact simply highlights that the CFC may be a practical requirement to rent a car *at the facility*.  *See* Phoenix City Code § 4-79(A).  It is no barrier at all to anyone who chooses to rent elsewhere.  More importantly, the test under *Saban* does not ask whether payment of the tax or fee presents a *practical* barrier to (as Pope and Roberts phrase it) "getting on the roads."  Rather, the test asks whether the tax or fee affects *lawful* road use: to fall within the anti-diversion provision, payment must be necessary for "*legal* operation or use of a vehicle on a public road."  *Id.* at 99, ¶ 39 (emphasis added).  Indeed, a contrary rule would sweep too broadly, reaching even taxes and fees that Pope and Roberts concede are not subject to anti-diversion restrictions, such as a fee paid to exit a parking garage, the transaction-privilege tax imposed on car rentals, and even the stadium surcharge at issue in *Saban*.  *See id.* at 97–98, ¶¶ 31–35.

**¶18**         Comparing the CFC to a toll, Pope and Roberts assert that the CFC is a prerequisite to road usage notwithstanding that customers can avoid the charge by renting elsewhere.  But a toll is imposed—and payment is necessary—for the privilege of using a particular road or bridge.  A driver cannot lawfully take that route without paying the toll.  Non-payment of the CFC imposes no such restrictions on whether or where a renter can drive.  The comparison thus underscores rather than contradicts *Saban*'s focus on whether a tax or fee is a prerequisite to "legal" vehicle operation.  *See id.* at 99, ¶ 39.  Being a practical prerequisite to completing the rental transaction at a particular location means the CFC is essentially a facility usage fee and does not transmute the charge into a legal prerequisite to lawful operation or use of the vehicle on Arizona roadways.

**¶19**         Moreover, as the governing ordinance makes clear, the CFC is triggered not by a rental customer's eventual road use but rather by car rental companies' use of the airport's consolidated rental car facility to serve customers.  *See* Phoenix City Code § 4-79.  The CFC is required only for car rental companies that use the facility (whether occupying space on-site or obtaining customers through the facility for an off-site location), and those companies must collect the fee from only their airport customers.  Phoenix City Code § 4-79(A).  Furthermore, the ordinance directs that the funds generated by the CFC go to the facility itself for construction, ongoing operating costs, and future capital improvements, thus highlighting that the CFC is a usage fee intended to help offset the facility's cost.  *See* Phoenix City Code § 4-79(C)(1).

¶20         Pope and Roberts assert, however, that the CFC is necessarily directed to customers' road usage, not their use of the facility, because it is calculated based on "transaction days" (duration of the rental) and not, for instance, as a flat rate or percentage per transaction. *See* Phoenix City Code § 4-79(A) (CFC imposed at a rate of "six dollars per transaction day per vehicle"). But this amount plausibly relates to the volume of a car rental company's business at the facility: how many vehicles the company needs there and thus how much space at the facility it needs to use. And the CFC is imposed at the specified rate regardless of whether, how much, or how often the customer ultimately uses the car. And because the CFC is triggered by use of the facility, not road usage, a customer who does not wish to pay the CFC may simply leave Sky Harbor and rent a car elsewhere.

¶21         Pope and Roberts argue that the CFC nevertheless falls within the anti-diversion provision because it is imposed directly on road users (the renters) and not on car rental companies (as was the case in *Saban*). *See Saban*, 246 Ariz. at 91, ¶¶ 1, 3. But the basic premise of this argument—that the CFC is imposed on rental customers—is far from clear. To be sure, the ordinance directs rental car companies to collect the CFC from airport customers. Phoenix City Code § 4-79(A) (covered rental car companies "shall collect" the CFC at the specified rate "from all Sky Harbor Airport customers"). But ultimately, it is the companies (not the customers) that are obligated to remit "all CFC's that were collected *or should have been collected*." Phoenix City Code § 4-79(C). Thus, by its terms, the ordinance controls only behavior by car rental companies, not their customers. *See, e.g.*, Phoenix City Code § 4-79(A) (requiring companies to collect the CFC), (B) (requiring companies to separately account for CFCs and hold funds in trust for the City), (C) (requiring companies to monthly remit all CFCs that were or should have been collected). And because the ordinance sets requirements only for the companies, the legal obligation to pay the CFC and the consequences for non-compliance likewise fall only on the companies, not customers. *See* Phoenix City Code § 4-80 (classifying "a violation of the requirements" of ordinances including § 4-79 as a class 1 misdemeanor).

¶22         But either way, the critical fact remains that the CFC is neither a prerequisite to nor triggered by legal use or operation of a vehicle on Arizona's roadways. *See supra* ¶¶ 16–20. And because the CFC does not qualify as a tax or fee "relating to . . . operation[] or use of vehicles on the public highways or streets" as defined in *Saban*, the superior court properly dismissed Pope and Roberts's complaints. *See* Ariz. Const. art. 9, § 14; *Saban*, 246 Ariz. at 99, ¶ 39. Because dismissal was proper on this basis, we

need not address the City's other proffered grounds for affirming the judgments.

## III.    Attorney's Fees on Appeal.

**¶23**        The City requests an award of attorney's fees on appeal under A.R.S. §§ 12-349 and -341.01.  In an exercise of our discretion, we deny the request.

## CONCLUSION

**¶24**        For the foregoing reasons, we affirm.

